We granted the petition of Athens State College ("Athens State") and its president, Dr. Jerry Bartlett, for a writ of certiorari to review the Court of Civil Appeals' judgment construing the Fair Dismissal Act, § 36-26-100 to -108, Ala. Code 1975, and applying it to the particular facts of this case.
During the 1970s, Athens State began sponsoring Limestone County's Retired Senior Volunteer Program ("RSVP"). RSVP, a program authorized under Title II, Part A, of the Domestic Volunteer Service Act of 1973, provided opportunities for retired members of the community to engage in volunteer services. Funds for RSVP were derived from federal grants, an appropriation from the State Legislature, and local funding from the City of Athens, the Limestone County Commission, and the local United Way. As a sponsor, Athens State furnished operating space and equipment for the program; it also managed the program's funds, which were maintained in a separate account. Betty Ruth became director of the RSVP at Athens State around 1977.
In 1989, the Alabama Department of Examiners of Public Accounts ("DEPA") was asked if state law permitted Athens State to sponsor RSVP. That agency concluded that § 38-1-6, Ala. Code 1975, "does not extend authority to an institution of *Page 711 
higher education, such as Athens State College to be a `sponsor' in the RSVP."[1] As a result of the DEPA opinion, Athens State's president at that time, James R. Chasteen, advised Ruth in writing that the College would no longer serve as an RSVP sponsor.
State Senator Jim Smith disagreed with the opinion issued by DEPA. In an October 1989 letter to DEPA, Smith stated his belief that Athens State, as a state entity, was a legitimate sponsor of RSVP under §38-1-6. Smith also requested an attorney general's opinion regarding the legality of Athens State's sponsorship of RSVP.
In January 1990, the attorney general issued an opinion to Senator Smith, stating that § 38-1-6 permitted state institutions to sponsor RSVP; therefore, Athens State's sponsorship, the attorney general said, was permissible. The attorney general's opinion stated that Athens State could legitimately sponsor RSVP if certain conditions were met: (1) the College was not required to provide monetary support; (2) the College could withdraw as sponsor at any time; and (3) the College was not required to make up any deficiency in funds for RSVP. Following the issuance of the attorney general's opinion, Athens State continued to sponsor the Limestone County RSVP.
After conducting a routine audit in 1995, DEPA determined: "[T]he services provided by [Athens State] to RSVP exceed the scope of the [1990] attorney general's opinion in that the real value of the services rendered constitutes monetary support. Furthermore, the Department is concerned that this support is being provided through the use of restricted funds in an unauthorized manner." On April 18, 1995, Dr. Bartlett, the president of Athens State, informed Ruth of the DEPA opinion and notified her that Athens State was withdrawing its support of the program. On April 24, 1995, Ruth responded, suggesting that Athens State sign a contract with RSVP enumerating the services provided by RSVP. The following day, Dr. Bartlett contacted DEPA and requested that it explore Ruth's suggestion. On May 3, 1995, the DEPA office recommended to Dr. Bartlett that Athens State "abide by the [DEPA] correspondence of March 8, 1995." Athens State's attorney reviewed the laws applicable to RSVP and advised Dr. Bartlett to discontinue "any relationship with Limestone County RSVP." In August 1995, Athens State, through Dr. Bartlett, notified Ruth that it intended to terminate her job, and by the end of the month Athens State wrote Ruth, informing her that she would not be reemployed by Athens State. Dr. Bartlett explained in the letter to Ruth:
 "The position of RSVP Director is being eliminated because of, and in conjunction with, the discontinuance of Athens State College sponsorship of [RSVP]. As you know, the State of Alabama Department of Examiners of Public Accounts has required, directed, encouraged, and/or otherwise caused Athens State College to discontinue such sponsorship. Therefore, your intended termination of employment is based upon a justifiable decrease in positions (the elimination of the position of RSVP Project Director)." *Page 712 
Several months after Ruth's job was terminated, the attorney general issued an opinion stating that providing in-kind services was not providing monetary support. Nevertheless, the opinion noted that Athens State's assistance to RSVP was voluntary and could be terminated at any time. By July 5, 1995, United Way had assumed the role of sponsor of the RSVP; Ruth continued to serve as the director.
Despite the fact that Ruth did not lose her position, she appealed the decision made by Athens State and Dr. Bartlett, and on February 17, 1997, an employee panel, pursuant to § 36-26-105, reviewed the termination. After a hearing, the panel held that Athens State had the right to discontinue the RSVP, but that Ruth should have been reinstated as a nonteacher employee. Athens State petitioned the Limestone Circuit Court for a writ of certiorari, requesting that the court review the panel's decision. Ruth responded to the petition and filed a declaratory- judgment counterclaim and a petition for a writ of mandamus, or in the alternative, a writ of certiorari, alleging that Athens State and Dr. Bartlett had violated the Fair Dismissal Act and the written policies and regulations of Athens State. Ruth sought a judgment declaring that she was entitled to reinstatement, compensation, and backpay. Ruth and Athens State both filed summary judgment motions.[2] In July 1998, the circuit court entered a summary judgment in favor of Ruth, holding that substantial evidence supported the panel's decision. The court also held that because the Teacher Tenure Act, §§ 16-24-1 to -38, Ala. Code 1975, had been interpreted to prohibit the dismissal of a tenured teacher when a nontenured teacher held a position for which the tenured teacher was qualified, Ruth should have been offered a position held by a probationary employee. Athens State and Dr. Bartlett appealed. On August 20, 1999, a divided Court of Civil Appeals affirmed the circuit court's judgment. The Court of Civil Appeals, construing § 36-26-102, Ala. Code 1975 (the Fair Dismissal Act), in pari materia with § 16-24-8
(the Teacher Tenure Act), upheld the panel's decision requiring Athens State to place Ruth in another nonteacher position for which she was "qualified." Athens State College v. Ruth, 795 So.2d 703
(Ala.Civ.App. 1999). Judges Crawley and Thompson dissented. On certiorari review, we reverse and remand with instructions.
This case presents the narrow question whether the Fair Dismissal Act requires that a nonprobationary, nonteacher employee, whose position is terminated on the basis of a "justifiable decrease in jobs in the system, " be placed in another employment position currently held by a probationary, nonteacher employee, for which position the nonprobationary employee is "qualified" but has never before held. Based on the particular facts of this case, we hold that it does not.
In reviewing the employee review panel's decision, this Court is
 "limited to the questions (1) whether there is substantial evidence to support [the] panel's decision, (2) `whether the findings and conclusions of the panel were contrary to the uncontradicted evidence, or [(3)] whether there was an improper application of the findings viewed in a legal sense.' Colbert County Bd. of Educ. v. Johnson, 652 So.2d 274, 275-76 (Ala.Civ.App. 1994)." *Page 713 
Jefferson County Bd. of Educ. v. Moore, 706 So.2d 1147, 1148 (Ala. 1997).
We begin our review with an examination of the pertinent language of the Fair Dismissal and Teacher Tenure Acts. Ruth, as a nonprobationary, nonteacher employee of a state two-year college,* was subject to the termination procedures set forth in the Fair Dismissal Act, §§ 36-26-100
to -102. Section 36-26-102 states that a nonprobationary "employee's employment shall . . . not be terminated except for failure to perform his or her duties in a satisfactory manner, incompetency, neglect of duty, insubordination, immorality, justifiable decrease in jobs in the system, or other good and just causes." The contract of a tenured teacher may be canceled for "incompetency, insubordination, neglect of duty, immorality, justifiable decrease in the number of teaching positions or other good and just cause." § 16-24-8.
In Ex parte Alabama State Tenure Commission, 595 So.2d 479 (Ala. 1991), a teacher, Jones, became ineligible to teach driver's education because his driver's license had been suspended and his automobile insurance was canceled. After Jones was terminated, based on his inability to perform his primary teaching assignment, he appealed to the Alabama State Tenure Commission. The Commission reversed the board's termination, finding that Jones's termination was arbitrarily unjust because, it found, the board had hired nontenured teachers to teach subjects for which Jones was certified to teach. This Court upheld the Tenure Commission's finding and held that the board had to show that there were no nontenured teachers hired to teach in the same fields that the discharged tenured teacher was qualified to teach in. 595 So.2d at 482.
Although in this present case the Court of Civil Appeals construed § 36-26-102 in pari materia with § 16-24-8, Judge Crawley questioned the correctness of the majority's holding. He wrote in his dissent:
 "Sections 16-24-8 and 36-26-102 have almost identical language, but I would not construe them in pari materia, because they do not deal with the same subject matter.
 "Section 16-24-8 has been interpreted to require that a tenured teacher's employment may not be terminated if a nontenured teacher holds a teaching position for which the tenured teacher is certified. See Ex parte Alabama State Tenure Comm'n, 595 So.2d 479 (Ala. 1991); Pickens County Bd. of Educ. v. Keasler, 263 Ala. 231, 82 So.2d 197 (1955); and Golden v. Alabama State Tenure Comm'n, 718 So.2d 73
(Ala.Civ.App. 1998). Ruth contends that she is qualified to perform other nonteacher jobs at the College. I do not agree that Ruth should be made presumptively qualified to hold another nonteacher position at the College, i.e., I would not bestow Ruth with precisely the same seniority that a tenured teacher has.
 "The nature of Ruth's employment and the nature of a teacher's employment are quite different. Teachers are certified to teach in specific areas and in those specific areas only. State Bd. of Educ. Admin. Code, § 290-3-2-.03. A teacher's `qualification' for a teaching position is automatically determined by his or her areas of certification. State Bd. of Educ. Admin. Code, § 290-3-2-.01 et seq.
 "Unlike a teacher certified to teach in particular subject areas, Ruth is not presumptively *Page 714 
qualified to perform any of the varied nonteacher positions at the College. Ruth has been the director of a specific program. To force the College to place her in another position held by a probationary, nonteacher employee without allowing the College or Ruth's potential supervisor to consider Ruth's specific qualifications for a position and without allowing the consideration of the preferences of the supervisor or the particular needs of the College in filling that position would create an undue hardship on the College."
795 So.2d at 708-09. (Emphasis original.)
We agree with Judge Crawley. Based on the facts before us, we conclude that § 36-26-102 should not have been construed in parimateria with § 16-24-8. Tenured teachers are afforded special protections. The "special" consideration given tenured teachers is reflected in the Tenure Act's purpose, which is "to promote stability in employment and to prevent a board from discharging a tenured teacher instead of a nontenured teacher." Ex parte Alabama State Tenure Comm'n, 595 So.2d at 481.
 "`It is well established that the Teacher Tenure Act has as its primary purpose the securing of permanency in the teaching force and that it is remedial in nature and is therefore to be liberally construed in favor of the teacher. State Tenure Comm'n v. Board of School Commissioners of Mobile County, 378 So.2d 1142
(Ala.Civ.App. 1979); Haas v. Madison County Board of Education, 380 So.2d 873 (Ala.Civ.App. 1980).'"
Id., 595 So.2d at 481-82 (quoting Ex parte Wright, 443 So.2d 40, 42 (Ala. 1983)). The purpose of the Fair Dismissal Act, on the other hand, is "to provide nonteacher employees a fair and swift resolution of proposed employment terminations." Bolton v. Board of School Comm'rs of MobileCounty, 514 So.2d 820, 824 (Ala. 1987). Thus, while §§ 36-26-102 and16-24-8 may contain similar language, the two provisions are by no means identical.
Ruth's only connection with Athens State was based on the college's sponsorship of the RSVP. No evidence indicated that Ruth had ever been employed by Athens State in any capacity before the college became involved in the RSVP. Athens State terminated its relationship with the RSVP; thus, the position of RSVP director was no longer available. Accordingly, Ruth was dismissed because of a justifiable decrease in jobs. Athens State and Dr. Bartlett followed the termination procedures set forth in the Fair Dismissal Act. Athens State was justified in terminating Ruth's employment, and it should not have been required to find another position for which she was "qualified," particularly since she continued to serve as RSVP director under the sponsorship of the United Way.
The judgment of the Court of Civil Appeals is reversed, and the case is remanded for that court to instruct the circuit court to enter a judgment in favor of Athens State and Dr. Bartlett.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Hooper, C.J., and Maddox, Houston, See, and Lyons, JJ., concur.
Johnstone, J., concurs specially.
England, J., concurs in the result.
* Note from the reporter of decisions: Athens Sate College is a two-year institution, offering junior- and senior-level classes. See § 16-60-110(5), Ala. Code 1975 (Athens State college is "[a]n educational institution offering instruction on the level of difficulty of the third and fourth years above the high school level.").
[1] Section 38-1-6 provides:
 "(a) The state government and all county and municipal governments in this state are hereby authorized to voluntarily participate in any program which is related to any form of assistance for the aged, including, but not limited to, such programs as senior citizens volunteers, foster grandparents, senior aids, various programs of the Federal Department of Health, Education and Welfare and any other program supported by the federal government, private foundations or other political or private organizations which establish assistance programs for the aged. Participation in said old-age assistance programs may be in the form of moneys, services rendered or any other form of voluntary participation available."
[2] Athens State and Dr. Bartlett also filed an opposition to Ruth's motion for summary judgment.