In August 1999, W. Michael Bailey, the president of Bessemer State Technical College ("the College"), gave notice to Barbara Hosea-Studdard of her proposed termination from her job as displaced homemakers/sex-bias-elimination coordinator at the College, because federal funding for the project was being discontinued. Hosea-Studdard was informed that she was entitled to a pre-termination hearing and that if she was terminated from her employment with the College, she was entitled to an appeal and a hearing of that decision in accordance with the Fair Dismissal Act, 36-26-100 et seq., Ala. Code 1975, and the rules of the State Board of Education.
Following the pre-termination hearing, Hosea-Studdard was terminated from her employment with the College on October 1, 1999. She subsequently sought an appeal and a hearing before a hearing panel.
Following hearings on January 10, January 11, and January 18, 2000, the panel, on March 3, 2000, entered an order reversing the decision of the College and ordering that Hosea-Studdard be reinstated with the College. The panel's main opinion, authored by member Bryant A. Whitmire, reads as follows:
 "1. That Hosea-Studdard was an employee of Bessemer Technical College. Her job position was dissolved by non-funding of the Federal Government on the program that she ran.
 "2. That four full [-time] new positions were opened up due to a restructuring of [the] programs of the college.
 "3. That [Hosea-Studdard] applied for three of those four new positions and was deemed qualified for said positions due [to] the fact that she was granted an interview.
 "4. [Hosea-Studdard] was not deemed to be one of the most qualified and three individuals were submitted to the President of the college so that he could make a decision as to who would receive said position. One of the said positions was filled with a probationary individual who presently holds the job.
 "5. That the college followed all the rules and regulations as prescribed by Shuford v. Alabama State Board of Education[, 846 F. Supp. 1511 (M.D.Ala. 1994)]. . . .
 "6. That there was evidence presented that there may have been some animosity between the interviewers and the applicant, [Hosea-Studdard]. However, there was not enough evidence to show that she was unfairly treated or that there were political or prejudicial motives in her not being submitted to the president.
 "7. [Hosea-Studdard] had been employed with the college for approximately ten years and was a non-probationary employee. At the time of the termination [Athens State College v. Ruth, 795 So.2d 703
(Ala.Civ.App. 1999),] had not been issued. Therefore, the college acted in a fair and impartial manner in making its selection.
 "8. The Athens State [College] opinion was issued in December of 1999, and is the current law. It specifically states that a tenured employee should be given any job opening that they [are] qualified for, rather than allowing a non-probationary individual or other individuals to have said job.
 "9. It is the opinion of the undersigned that the spirit of [Athens State College] case was to make sure that tenured employees were given the first opportunity to be appointed to said positions that he/she may be qualified [for]. It was apparent that [Hosea-Studdard] *Page 49 
was qualified for at least three of the positions that were opened during the span of her termination. The college correctly decided, based on the Shuford case, that they had the perogative to submit the most qualified to the college president, and they felt like that is what they had done.
 "10. However, under the current law, the case law is in conflict with the Shuford decision, which would give the president of the college the opportunity to pick the most qualified. If a tenured employee was qualified for a job opening, then they should be placed in that position, and the interview process [pursuant to Shuford] should not have occurred. This would leave the president without the opportunity to decide who is the most qualified. Therefore, if you follow your current law, [Hosea-Studdard] should be slotted in one of the three positions for which she was qualified. . . .
 "The argument that this case law is not retroactive did not change the fact that panel members are required to follow the current law, even though, the college, at that time, did not have that decision before them so that they could follow said law. This panel member believes that they did follow the proper procedure. Under the current law, we are in non-compliance with [Athens State College], if we uphold the decision of the college. The fact of whether it is retroactive or not does not change the fact current law requires a tenured employee be given that position if qualified."
Panel member William M. Dawson issued a concurring opinion joining the opinion authored by Whitmire and stating additionally that the "applicable law from the Alabama appellate courts is clearly controlling precedent in this case. Failure by the school to consider the employee's permanent status renders the action to terminate arbitrary and not in conformity with law."
On April 3, 2000, the College petitioned the Circuit Court of Jefferson County, Bessemer Division, for a writ of certiorari, asking it to reverse the panel's judgment. On June 12, 2001, Hosea-Studdard moved for a summary judgment; on July 31, 2001, the College responded to her motion. On August 8, 2001, the trial court entered a summary judgment in favor of Hosea-Studdard, finding that the decision of the hearing panel was supported by substantial evidence. The College appeals.
In reviewing the disposition of a motion for summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. JohnDeere Co., 531 So.2d 860, 862 (Ala. 1988); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank ofBaldwin County, 538 So.2d 794 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc.,564 So.2d 412 (Ala. 1990).
Hosea-Studdard was employed by the College in the non-teacher position of coordinator of the displaced *Page 50 
homemakers/sex-bias-elimination project ("the Project"). She had obtained nonprobationary status with the College under the Fair Dismissal Act. Hosea-Studdard's salary was paid with State funds; however, the project she administered was federally funded.
The Project was funded with specific line-item funding through the Carl D. Perkins Vocational and Technical Education Act, 20 U.S.C. § 2301
et seq., (1988) ("the Perkins Act"). However, in 1998, amendments to the Perkins Act changed the procedure for obtaining Perkins Act funding. The amendments eliminated the line-item through which the Project was funded and implemented a process whereby individual states were required to develop a "state plan for career technical education." The state plan for Alabama was to implement a plan known as "Workforce 21." This plan was approved by the federal government as the state plan for Alabama.
In order to implement the Workforce 21 plan, the various institutions, including the College, were required to develop a college plan consistent with the state plan. To that end, the College was required to assemble a strategic analysis team ("the Team") to assess the needs of the College and to develop the college-level plan. The Team was to consist of representatives from the College, as well as representatives of local business, industry, and labor. Bailey, as the College's president, was responsible for appointing the local members of the Team from the College. Bailey then had no further involvement with the Team until it had developed the college-level plan and submitted it to the Alabama State Department of Postsecondary Education ("the Department"). The college-level plan submitted to the Department would ultimately become the College's application to the federal government for funding under the Perkins Act.
In June 1999, Fred Gainous, the chancellor of the Department, notified Bailey that Perkins Act funding was no longer earmarked for the Project; however, he also notified Gainous that Perkins Act funding could be used to support the Project if the Project was identified as a priority in the college-level plan. The Perkins Act provides that the funds must be used for required activities and may be used for certain permitted activities. The recipient of the Perkins Act funds must undertake the required activities first, then if any funds remain, the recipient may undertake the permitted activities.
The Team determined that certain projects and positions that had previously been funded with Perkins Act funding were no longer consistent with the activities required under the Perkins Act, with the Team's assessment of the needs of the College, and with the demographics of the College's student body. Particularly, the Team concluded that the Perkins Act funds were not put to the best use by segregating the students enrolled in the Project into a separate program and expending the funds specifically for that group; the Project as a separate and distinct program was eliminated.
Bailey approved the college-level plan and it was then submitted to the Department. As a result of the Team's assessment, four individuals, including Hosea-Studdard, were notified that their positions would be eliminated and that their employment with the College would be terminated. The notice informed Hosea-Studdard that her termination was the "result of discontinuation of federal funding for the activities and projects you coordinate."
In addition to eliminating the four positions, the Team also created four new positions. These newly created positions were *Page 51 
at the same salary grade as was Hosea-Studdard's position of coordinator of the Project, and some of the same services offered under the Project were also being offered under the newly created programs. The four new positions were posted and advertised. Copies of the job announcements were hand-delivered to the four individuals whose positions had been eliminated, and they were encouraged to apply for the positions. Hosea-Studdard applied for each of the four new positions.[1] Based on the selection committee's initial review of Hosea-Studdard's application and the requirements for the newly created positions, it was determined that she met the minimum qualifications for three of the four positions — curriculum specialist, teaching and learning coordinator, and career services coordinator — and she was invited to interview for those three positions. Following Hosea-Studdard's interview, the selection committee determined that she was not qualified, or that she was not the most qualified, for either of the three new positions for which she had interviewed. Consequently, Hosea-Studdard was not one of the three applicants submitted to Bailey for employment pursuant to theShuford consent decree.
The College argues that the trial court erred in entering a summary judgment in favor of Hosea-Studdard, because, it says, the decision of the hearing panel was based solely on this court's decision in AthensState College v. Ruth, 795 So.2d 703 (Ala.Civ.App. 1999), and that decision was subsequently overruled by the supreme court in Ex parteAthens State College, 795 So.2d 709 (Ala. 2000), while its petition for a writ of certiorari was pending in the trial court.
In reviewing the decision of a hearing panel, this court's standard of review is *Page 52 
the same as that of the circuit court's. Colbert County Bd. of Educ. v.Johnson, 652 So.2d 274 (Ala.Civ.App. 1994). Our review is limited to questions of whether there was substantial evidence to support the panel's decision, whether the panel's findings were contrary to the uncontradicted evidence, and whether the panel improperly applied the law to the findings. Jefferson County Bd. of Educ. v. Moore, 706 So.2d 1147
(Ala. 1997). In this case, the College asks this court to decide a question of law, therefore, our review is de novo. Thompson Tractor Co.v. Fair Contracting Co., 757 So.2d 396 (Ala. 2000).
Following Hosea-Studdard's termination from her employment with the College but before the hearing before the panel, this court issued its opinion in Athens State College v. Ruth, supra. In that case, Betty Ruth, a nonprobationary nonteacher, had been employed with the college for 17 years as the director of the county retired senior volunteer program ("RSVP"). In April 1995, the college informed Ruth that it would no longer sponsor the RSVP, gave notice to her of its intent to terminate her employment, and did in fact terminate her employment. In the notice, the college alleged that the elimination of the RSVP necessitated a justifiable decrease in jobs. Id. A hearing was held before a review panel to consider Ruth's termination by the college. The review panel ordered that she be reinstated as a nonteacher employee of the college. The college petitioned the circuit court for a writ of certiorari; that court affirmed the decision of the hearing panel, and the college appealed to this court. Id.
The college argued on appeal that it was not required to retain Ruth as an employee after it stopped sponsoring the RSVP. The college contended that the only way for it to have retained Ruth as an employee was to place her in a position occupied by a probationary nonteacher employee, and that it was not required to do that. Ruth argued that the college was required to place her in a position held by a probationary, nonteacher employee for which she was qualified. Id. This court agreed with Ruth and held that although Ruth's position had been eliminated, the college had other positions for which she was qualified; it affirmed the panel's decision ordering the college to place her in a position for which she was qualified and that was being held by a probationary, nonteacher employee. Id.
Judge Crawley dissented from this court's opinion in Athens StateCollege v. Ruth, concluding that the college was justified as a matter of law in terminating Ruth's employment based on a justifiable decrease in positions, and stating that once the college decided to stop its sponsorship of the RSVP, it was not required to retain Ruth as an employee. Judge Crawley stated:
 "To force the College to place [Ruth] in another position held by a probationary, nonteacher employee without allowing the College or Ruth's potential supervisor to consider Ruth's specific qualifications for a position and without allowing the consideration of the preferences of the supervisor or the particular needs of the College in filling that position would create an undue hardship on the College."
795 So.2d at 709 (Crawley, J., dissenting; Thompson, J., also dissented, without writing).
While the College's petition for a writ of certiorari was pending in the trial court, the supreme court issued its opinion in Ex parte AthensState College, 795 So.2d 709 (Ala. 2000), reversing this court's judgment. The supreme court agreed with Judge Crawley, quoting extensively from his dissenting opinion, and holding that once the *Page 53 
college stopped sponsoring the RSVP, the position of RSVP director was no longer available; that the college was justified in terminating Ruth's employment; and that the college was not required to place Ruth in another position for which she was qualified. Ex parte Athens StateCollege, 795 So.2d at 713-14.
Hosea-Studdard argues that the College has waived its argument regarding the Ruth case, because, it says, the College conceded before the hearing panel that it was required to place her in one of the new positions if she was qualified for the position. Hosea-Studdard focuses on the following statements made by the College's counsel to the hearing panel:
 "Now, the college does certainly conceive[2] that in instances where a person is a non-probationary employee and their position is eliminated for whatever reason other than for not being able to perform their duties satisfactor[ily] or some other reason other than cause, that if there was a position for that person at the college that they are in fact qualified to receive, that they should receive that position subject to the provisions of a federal court order that is known by people in the education area as the Shuford consent decree. . . . [W]e expect to show that everything was done completely in accordance with the rules and regulations of the State Department of Education and the Shuford consent decree and that when it got down to determining who would fill the vacant positions that the selection and interview process demonstrated that [Hosea-Studdard] was not qualified for the position and, therefore, was not put in one of them. That is all."
We do not agree that this statement by the College's attorney waived its argument regarding the reversal of the Ruth decision by the supreme court. The College's attorney was merely stating the law as it existed at the time of the hearing before the panel, and it cannot be construed as a prospective waiver of any future change in the law.
Accordingly, we must consider whether the reversal of the Ruth decision by our supreme court necessarily required the trial court in the present case to apply the law as pronounced by our supreme court in Ex parteAthens State College, and reverse the decision of the hearing panel. A reading of the hearing panel's decision in reversing the College's decision to terminate Hosea-Studdard's employment indicates that it relied solely on this court's decision in Athens State College v. Ruth, before it was reversed by the supreme court. The hearing panel concluded that Hosea-Studdard was deemed qualified for three of the four new positions based on the fact that she had been granted interviews for those positions. The hearing panel concluded that the College was correct in its determination that, based on the Shuford consent decree, it had the prerogative to submit the three most qualified applicants for each of the new positions to Bailey for possible employment, and that Hosea-Studdard was not deemed by the selection committee to be one of the three most qualified applicants. The hearing panel determined that the College had complied with the mandates of the Shuford consent decree. However, the hearing panel also determined that the Shuford consent decree was in conflict with this court's decision in Athens State College v. *Page 54 Ruth, and that that decision was the current law. The hearing panel concluded that following the current law of Athens State College v.Ruth, Hosea-Studdard should have been placed in one of the three positions for which she was qualified.
Our supreme court has stated:
 "The general rule is that a case pending on appeal will be subject to any change in the substantive law. The United States Supreme Court has stated, in regard to federal courts that are applying state law: `[T]he dominant principle is that nisi prius and appellate tribunals alike should conform their orders to the state law as of the time of the entry. Intervening and conflicting decisions will thus cause the reversal of judgments which were correct when entered.' Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 543, 61 S.Ct. 347, 85 L.Ed. 327 (1941). See also United States v. Schooner Peggy, 1 Cranch 103, 5 U.S. 103, 2 L.Ed. 49 (1801). Thus, courts are required to apply in a particular case the law as it exists at the time it enters its final judgment:
 "`[I]t has long been held that if there is a change in either the statutory or decisional law before final judgment is entered, the appellate court must "dispose of [the] case according to the law as it exists at the time of final judgment, and not as it existed at the time of the appeal." This rule is usually regarded as being founded upon the conceptual inability of a court to enforce that which is no longer the law, even though it may have been the law at the time of trial, or at the time of the prior appellate proceedings.'
 "Note, Prospective Overruling and Retroactive Application in the Federal Courts, 71 Yale L.J. 907, 912 (1962) (quoting Montague v. Maryland, 54 Md. 481, 483 (1880))."
Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432, 438 (Ala. 2001). Additionally, our supreme court stated:
 "`Although circumstances occasionally dictate that judicial decisions be applied prospectively only, retroactive application of judgments is overwhelmingly the normal practice. McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156 (Ala. 1996) (plurality opinion). "Retroactivity `is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law. . . . It also reflects the declaratory theory of law, . . . according to which the courts are understood only to find the law, not to make it.'" 687 So.2d 156, quoting James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 535-36, 111 S.Ct. 2439, 2443-44, 115 L.Ed.2d 481 (1991).'"
Lyles, 797 So.2d at 439, quoting Professional Ins. Corp. v. Sutherland,700 So.2d 347, 352 (Ala. 1997).
It is clear that the hearing panel relied solely on this court's decision in Athens State College v. Ruth in reversing the decision of the College to terminate Hosea-Studdard's employment. While the case was pending in the trial court on the College's petition for a writ of certiorari, the supreme court, in Ex parte Athens State College, reversed this court's judgment. We conclude that the trial court erred as a matter of law in failing to apply the law as it existed at the time it entered the summary judgment in favor of Hosea-Studdard, i.e., the law as pronounced by the supreme court in Ex parte Athens State College, and in failing to reverse the decision of the hearing panel.
The hearing panel has already concluded that the College, pursuant to the Shuford consent decree, had the authority to submit the three most qualified applicants to Bailey for possible employment, that the *Page 55 
selection committee had determined that Hosea-Studdard was not one of the three most qualified applicants, and that the College had complied with the mandates of the Shuford consent decree. Accordingly, the summary judgment entered in favor of Hosea-Studdard is due to be reversed and the case is remanded to the trial court for it to enter a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Crawley, Thompson, Pittman, and Murdock, JJ., concur.
[1] The hiring and promotion practices of all junior, technical, and community colleges in Alabama are governed by the consent decree entered in Shuford v. Alabama State Board of Education, 846 F. Supp. 1511
(M.D.Ala. 1994). In Shuford, Humphrey L. Shuford, a black male, brought a civil-rights action against the Alabama State Board of Education, claiming that he had been denied promotions because of his race. The parties submitted to a proposed consent decree, which was approved by U.S. District Judge Myron Thompson.
The consent decree requires, among other things, that when a faculty or staff position vacancy occurs, a complete and accurate job description for the position must be developed, and the vacancy must be advertised. The vacancy announcement must specify the salary range and describe fully the duties, qualifications, and selection criteria for the position.Shuford, 846 F. Supp. at 1537.
Applicants who meet the minimum requirements contained in the vacancy announcement shall be invited for an interview; however, the selection committee may limit the number of interviews to 10, if more than 10 minimally qualified applicants apply. Shuford, 846 F. Supp. at 1538. The selection committee must have at least 40% black membership; the selection committee is charged with the responsibility of screening the applications and interviewing the applicants. The selection committee shall then recommend three names to the president of the institution for employment. The president may then select one of the applicants for the vacancy recommended by the selection committee. The president shall not select any person to the fill the vacancy that was not recommended by the selection committee. However, the president, if he or she deems it necessary, may reopen the application and selection process. Shuford,846 F. Supp. at 1539.
The Shuford consent decree also provides for lateral transfers of permanent status employees. In the event that there are one or more nonprobationary employees employed in positions that are equivalent to the vacant position in pay grade and responsibility, "the president of the college shall have the discretion, in lieu of external solicitation of applicants," to offer such employees the opportunity for lateral transfer into the vacant position. Shuford, 846 F. Supp. at 1539. Bailey testified that he had the discretion to choose the lateral transfer process but did not do so in this case.
[2] Hosea-Studdard contends that the presence of the word "conceive" is the result of a typographical mistake because it is not contextually inappropriate. She contends that the College actually used the word "concede." The College disputes this contention, and contends that the transcript is correct.