Linda Combs appeals a judgment of the Walker Circuit Court affirming the decision of a Fair Dismissal Act panel to uphold the termination of her employment as an instructor at Bevill State Community College ("BSCC"). We reverse.
BSCC is a postsecondary educational institution funded in part by the State of Alabama Special Education Trust Fund ("the SETF"). Its main campus is in Sumiton, Alabama, and it has branch campuses in Hamilton, Fayette, and Jasper, Alabama. Dr. Harold Wade has been the president of BSCC for 30 years. Although Dr. Harold Wade is the nominal party to this appeal, but was sued in his official capacity as the president of BSCC, BSCC *Page 466 
is, in effect, a party. See Haley v. Barbour County,885 So.2d 783, 788 (Ala. 2004) (stating that "claims against state officers in their official capacity are `functionally equivalent' to claims against the entity they represent"). Therefore, we will refer, throughout this opinion, to the arguments of Wade or BSCC interchangeably.
Before the termination of her employment, Linda Combs had been a child-development instructor at BSCC for 11 years. Each term, she had taught 3 or 4 child-development courses — 9 to 12 credit hours — on the Sumiton campus. She had, at times, taught child-development classes on the Jasper campus. On occasion, she had also taught a developmental English class in addition to her child-development classes. For the terms during which Combs taught developmental English, her teaching load was 15 credit hours.
In the early spring of 2001, the Governor of Alabama officially declared the SETF in proration, with higher education scheduled to receive a 6.2% reduction in funding from the amount originally allocated for that fiscal year. President Wade informed all BSCC employees that, if pro-ration remained at the level of 6.2% to 8%, the community college would be able to deal with the reduced funding, without dismissing any personnel, by implementing a variety of cost-cutting measures. Later in the spring, however, President Wade was notified that higher education, rather than the kindergarten through twelfth-grade system, would experience the brunt of reduced education funding and that proration for BSCC could reach the level of 11.8%.
On May 1, 2001, President Wade notified Combs by letter that, because of pro-ration and its impact on BSCC's budget, he intended to terminate Combs's employment. President Wade also informed Combs of the procedures under the Fair Dismissal Act ("the FDA"), § 36-26-100 et seq., Ala. Code 1975, by which she could contest the termination. Combs requested a pretermination hearing, and, following that hearing on June 6, Wade informed her on June 8 that her employment was terminated. Combs requested and was provided with an FDA hearing before a three-member employee-review panel as provided for in § 36-26-105, Ala. Code 1975.
At the FDA hearing beginning on October 12, 2001, President Wade testified that when proration was first announced, he instructed his deans and other administrators to begin cost-cutting measures. BSCC decreased travel budgets, discontinued renewal and renovation projects that had been planned, reduced the purchase of materials and supplies, and instituted a hiring freeze. BSCC Dean of Finance Mark Ellard testified about the severe effect of proration on BSCC's budgets. Combs's expert witness, William Lischkoff, a certified public accountant, gave his opinion that the effect of proration was not as severe as Ellard had indicated. Among other things, Lischkoff pointed out that, during the time in which BSCC engaged in major cost-cutting measures and terminated the employment of Combs and other employees, BSCC also made a discretionary transfer of $1 million to the "unexpended plant fund," a reserve fund for facilities maintenance. On cross-examination, Lischkoff acknowledged, however, that whether to save funds for maintenance of aging facilities or to spend funds on employee salaries was a "management call" within President Wade's discretion.
In the late spring of 2001, when President Wade was informed that proration could reach the level of 11.8%, he concluded that some reduction in personnel would be unavoidable. He asked his associate *Page 467 
deans and administrators to review BSCC's existing instructional programs to determine how personnel reductions could be made in a manner that would be minimally disruptive to students. President Wade testified that he and his administrators focused on eliminating probationary rather than nonprobationary employees and part-time personnel rather than full-time personnel because, he said, BSCC "could make adjustments by asking . . . full-time people to take on more responsibility and that would allow [BSCC] to make some cost-saving steps with part-time [personnel]."
Dr. Camilla Benton, the academic dean on the BSCC Jasper campus, testified that she recommended to President Wade that BSCC consolidate the child-development programs at the Sumiton and Jasper campuses, which were only 15 miles apart. Combs was then teaching several child-development classes in Sumiton. Valerie Vann, a full-time employee who had been with BSCC less than three years, was teaching one child-development class in Jasper. In addition, Vann had the following administrative responsibilities: she was the director of continuing education, the manager of a USDA food program, the coordinator of a summer youth program, the supervisor of a child-care facility, the director of a paralegal program, and a dormitory resident manager. Vann, along with all other probationary employees, received a nonrenewal letter from President Wade on April 1, 2001; Combs received a termination letter on May 1, 2001.
By July 2001, President Wade had been notified that proration of BSCC's funding would be returned to the 6.2% level. At that time, a number of employees, including probationary employees, were called back to work. Dean Benton recommended to President Wade that Vann be called back and offered an employment contract for the coming year. President Wade accepted Dean Benton's recommendation and reemployed Vann. Dean Benton stated that Vann was rehired for reasons other than her ability to teach child-development courses. She said that Vann was needed as an administrator. Dean Benton explained that Vann could be required — without much, if any, increase in pay — to teach the child-development courses that Combs had previously taught. President Wade testified that some employees, including Combs, were not rehired because he was concerned that proration might extend beyond the current fiscal year.
Both President Wade and Dean Benton testified that the "reduction-in-force" policy contained within the BSCC personnel handbook was not followed with respect to any of the personnel reductions during proration. Specifically, President Wade stated that the reduction-in-force policy did not apply to Combs because Combs was a part-time employee and that policy applied only to full-time employees. The record contains the contract, labeled
 "Bevill State Community College Contract of Employment Full Time"
that Combs signed for the 2000-2001 school term. Combs testified that she was paid as a part-time instructor on Schedule Dl, Rank 1A, Step 08, earning $18,779, one-half the pay of a full-time instructor. She testified that she had asked her supervisor, Dr. James Wade, Dean Benton's predecessor, to change her to full-time status because she was putting in the hours necessary to be s full-time instructor, but such a change never occurred.
Combs testified that she has a bachelor's degree in elementary education and a master's degree in early childhood education. She was awarded both degrees by the University of Alabama in Birmingham. She worked for three to five years as an *Page 468 
administrator for the engineering department at the Auburn University extension center in Birmingham. Then she taught in public and private elementary schools in Walker County "off and on" for 10 years before she was hired in 1990 as a child-development instructor at BSCC. Combs introduced documentary evidence indicating that Vann had a master's degree in elementary education but no experience or degree — and, in fact, had taken only one course — in early childhood education.
Combs testified that when she was hired by BSCC, the community college had no child-development curriculum. She explained that she had built the program from the ground up, by visiting other colleges to study their programs, by attending workshops, and by recruiting students who worked at local day-care centers to convince them of the value of an Associate of Arts certificate. Combs testified that she taught classes at night and on Saturdays to accommodate her students' work schedules. In addition, she said that she came back early from a medical leave after she broke her leg and hip because she knew that her students needed her courses to finish the child-development program. In the summer of 2001, after President Wade terminated her employment, Combs taught as an adjunct instructor in order to enable her students to graduate. Witnesses for BSCC acknowledged that the termination of Combs's employment was not based on poor job performance; they testified that she had been a very good instructor and they acknowledged that her duties required more than 20 hours — often 40 or more hours — of work each week.
Following the FDA hearing, two members of the panel voted to uphold President Wade's termination of Combs's employment, stating their findings and conclusions in a written opinion on June 25, 2002. That opinion states, in pertinent part:
 "After hearing testimony, considering numerous documents offered into evidence, and the arguments of the parties, the majority of the panel members find:
 "1) Proration of the [SETF] was declared by the Governor in the early part of 2001. The resultant loss of funding for [BSCC] was sufficient to justify its President, Dr. Harold Wade, to search for ways of cutting college expenditures to meet the funding loss.
 "2) The decisions of Dr. Wade, as to what personnel or what programs to eliminate were decisions within his discretion as President to make. The evidence before the panel demonstrated no abuse of that discretion.
 "3) The employee has raised no claim that her termination was the result of political or personal reasons on the part of the President or any administrator who may have recommended her termination. Therefore, the panel finds that the termination was not for political or personal reasons and was not arbitrary or unjust.
 "Ms. Combs has raised an issue related to the retention by [BSCC] of a probationary employee at a branch campus. [BSCC] issued a nonrenewal of contract notice to a Ms. Valerie Vann who worked as an administrator at [BSCC's] Jasper campus in April of 2001. Ms. Vann's nonrenewal notice was issued before Ms. Combs was notified of her proposed termination as a part-time child care instructor.
 "Ms. Combs testified that she was not qualified for the administrative job that Ms. Vann had held at Jasper. Neither Combs nor Vann taught child care at the Jasper campus as that one class was taught by an adjunct instructor. *Page 469 
 "During the summer of 2001, Dr. Wade accepted the recommendation of his Dean at the Jasper campus to re-employ Ms. Vann. That Dean partially convinced Dr. Wade of the wisdom of re-employing Ms. Vann by pointing out [that Vann] could, in addition to her administrative duties, teach the one child care class offered at Jasper that had been taught by the adjunct instructor.
 "The majority of the panel finds that [BSCC] did not retain a probationary child care teacher while terminating the nonprobationary Linda Combs. Instead, [BSCC] rehired/retained a probationary administrator whose position Ms. Combs was not qualified to hold, and then incidentally assigned the teaching of one class at the Jasper branch to that person.
 "Finally, the panel addresses the evidence concerning the financial impact proration has had on [BSCC]. Combs protests that there is still money available with which the college could cover her salary and benefits.
 "[BSCC] does not assert that proration has had a devastating effect on the college. [BSCC's] evidence demonstrated that there were crucial needs that a college must plan for if it hopes to avoid contingencies that would devastate its finances. The average age of buildings at the various [BSCC] campuses is thirty years. The President testified that he must have funding to cover the inevitable major repairs to these facilities if [BSCC] is to insure safe and comfortable classrooms for its students.
 "The panel simply finds that it is the prerogative of a college president to plan for such contingencies; that the amount set aside by Dr. Wade for such use was reasonable and prudent; and that a college administrator is under no obligation to wait until the college, whose financial health is his/her responsibility, is in a desperate condition before he/she can cut staff and programs.
 "For the above reasons, the under-signed majority of this panel votes to uphold the termination of Ms. Linda Combs."
One member of the panel dissented from the majority decision, with a written opinion on July 8, 2002. The dissenting opinion states, in pertinent part:
 "1) As President of [BSCC], Dr. Harold Wade's decision to dismiss Ms. Linda Combs was because of financial reasons, specifically proration. After hearing the testimony of the witnesses and considering financial documents, the loss of funding for [BSCC] because of proration was not sufficient to justify Ms. Combs's termination. Testimony by the expert witness for Ms. Combs and the school budgets that were introduced into evidence showed that proration did not have an effect on [BSCC's] funding for salaries and benefits of employees.
 "2) The decision of Dr. Wade to terminate Ms. Linda Combs as a childcare instructor was arbitrary and unjust. His action to terminate Ms. Combs was unreasonable because he released her from employment before all the facts were known regarding proration.
 "Sufficient evidence was introduced that President Wade was unjust in terminating Ms. Combs because of proration. Originally the Governor declared proration in early 2001, and the level set for higher education was 6.5%. At that time President Wade sent a letter to all employees that stated with proration at it current level, that no lay-offs would occur. At a later date, pro-ration was increased for higher education by over 11%, but was later reduced *Page 470 
to 6.5% by mid-July, 2001 by a Supreme Court decision. Ms. Combs received a termination letter in . . . May 2001 but did not receive a letter repealing the decision once proration was again at the 6.5% level, which was what it was earlier when President Wade stated no lay-offs would occur. Other employees, however, were called back to work, including probationary employees. For the record, Ms. Combs was a nonprobationary employee. Also, all community colleges received a bond issue, which lowered proration to 3.76%. The college budgets that would have affected this termination decision by the President were entered into evidence and the school finance director and an expert witness called by Ms. Combs testified. Based on the above-mentioned documents and the testimony of both witnesses, it was proven that there was enough money on hand within the budget to not justify the decision of the President to terminate Ms. Combs.
 "The majority opinion leads one to believe that because the employee that took over the childcare program once Ms. Combs was terminated was a probationary administrator, then probationary status does not matter. I completely dissent from this opinion. Both Ms. Combs and the probationary employee, Ms. [Valerie] Vann were instructors. President Wade made the decision to retain a probationary instructor over a nonprobationary instructor, which is against standard practice in reduction-in-force policies statewide. Ms. Camille Benton, who is an administrator at [BSCC] stated that other current administrators could have absorbed the additional administrative duties held by the probationary employee, Ms. [Valerie] Vann. President Wade did not take this into consideration in terminating the tenured employee, Ms. Linda Combs.
 "For the above stated reasons, I dissent from the majority opinion."
On July 25, 2002, Combs filed in the Walker Circuit Court a petition for review of the panel decision. Both parties moved for a summary judgment in the circuit court. After reviewing the record of the FDA panel hearing, as well as the briefs and arguments of the parties, the circuit court granted a summary judgment in favor of President Wade. The court's judgment states, in pertinent part:
 "It is without question that [Combs] was a very capable and competent employee of [BSCC], and she did a very good job for the College, and this is undisputed, however the [pane]] upheld the President's decision to terminate [Combs] for the reason given of proration, and there are no facts before this Court to show that the panel's decision was not based on substantial evidence before it, nor to show the panel acted in an arbitrary manner, nor to show the panel denied [Combs] due process of law, nor that it failed to follow the procedure set out in the [FDA] (§ 36-26-106 Code of Alabama)."
 Standard of Review
In an FDA case that has been appealed to a circuit court,[1]
this court employs the following standard of review: *Page 471 
 "In reviewing the decision of a hearing panel, this court's standard of review is the same as that of the circuit court's. Colbert County Bd. of Educ. v. Johnson, 652 So.2d 274 (Ala.Civ.App. 1994). Our review is limited to questions of whether there was substantial evidence to support the panel's decision, whether the panel's findings were contrary to the uncontradicted evidence, and whether the panel improperly applied the law to the findings. Jefferson County Bd. of Educ. v. Moore, 706 So.2d 1147 (Ala. 1997)."
Bessemer State Tech. Coll. v. Hosea-Studdard,851 So.2d 46, 51-52 (Ala.Civ.App. 2002).
 "The standard of judicial review applied to rulings of administrative agencies differs from that applied to rulings of trial courts. An appellate court will affirm a ruling of a lower court if there is any valid reason to do so, even a reason not presented to — or rejected by — the lower court. When reviewing the decision of an administrative agency, however, an Alabama court will affirm only if the action and the stated basis for the action are correct.
 "`[As this court is required to do,] the circuit court . . . was required to look to the Commissioner's decision and the reasons she gave for denying reimbursement. Where such decision is shown to be arbitrary and capricious, no posthoc rationalizations or theories for denying reimbursement can correct it.'
 "Alabama Medicaid Agency v. Beverly Enters., 521 So.2d 1329, 1333 (Ala.Civ.App. 1987)."
Ex parte Beverly Enters.-Alabama, Inc., 812 So.2d 1189,1195 (Ala. 2001) (emphasis added) (some citations omitted).
 I.
Combs contends that the panel's decision to uphold the termination of her employment was not supported by substantial evidence and the panel's findings were contrary to the uncontradicted evidence. To support those contentions, she points to what, she says, are three misstatements of the evidence in the panel's majority opinion, namely: (1) that "Ms. Combs testified that she was not qualified for the administrative jobs that Ms. Vann had held at Jasper"; (2) that "[n]either Combs nor Vann taught child care at the Jasper campus"; and (3) that BSCC "did not retain a probationary child care teacher while terminating the nonprobationary Linda Combs. Instead, [BSCC] rehired/retained a probationary administrator whose position Ms. Combs was not qualified to hold, and then incidentally assigned the teaching of one class at the Jasper branch to that person."
Combs is correct that the first statement listed above is a misstatement of the evidence. Combs did not testify that she was unqualified for the administrative jobs held by Vann. Dr. Camilla Benton testified that Combs did not have the qualifications or experience to handle the four or five administrative and supervisory positions that Vann was handling on the Jasper campus. In addition, President Wade testified that Combs had never done any administrative work at BSCC. Combs testified that, before she came to work at BSCC, she had three to five years' experience *Page 472 
as an administrator for the engineering department at the Auburn University extension center in Birmingham. The foregoing recitation of the evidence represents the only testimony regarding Combs's administrative qualifications or experience. There was no evidence of what qualifications were necessary in order to perform Vann's duties as an administrator. The issue whether Combs was qualified to handle Vann's administrative duties, however, was immaterial. Combs did not complain that she was not offered Vann's position as an administrator; she complained because Vann was given her (Combs's) position as a child-development instructor. Thus, any error in the panel's misstatement of the evidence on this point was harmless.See Rule 45, Ala. R.App. P.
The same cannot be said of the two other misstatements in the panel's majority opinion to which Combs directs our attention. The statement that "[n]either Combs nor Vann taught child care at the Jasper campus" is plainly and palpably wrong. The evidence was undisputed that both Combs and Vann had taught child-development classes at the Jasper campus. The factual error in the second misstatement — that Vann was merely an administrator, and not a child-development instructor, on the Jasper campus — logically but erroneously led the panel majority to conclude, in the third statement of which Combs complains, that BSCC "did not retain a probationary child care teacher while terminating the nonprobationary Linda Combs. Instead, [BSCC] rehired/retained a probationary administrator whose position Ms. Combs was not qualified to hold, and then incidentally assigned the teaching of one class at the Jasper branch to that person." As our supreme court stated in Exparte Beverly Enterprises, 812 So.2d at 1195, "[w]hen reviewing the decision of an administrative agency . . . an Alabama court will affirm only if the action and the stated basis for the action are correct." A stated basis for the employee review panel's decision to uphold the termination of Combs's employment — that BSCC "did not retain a probationary child care teacher while terminating the nonprobationary Linda Combs" — was factually incorrect; therefore, "no post hoc rationalizations or theories for [upholding the termination of Combs's employment] can correct it." Alabama Medicaid Agency v. Beverly Enters.,521 So.2d 1329, 1333 (Ala.Civ.App. 1987).
 II.
Combs argues that the panel improperly applied the law to the findings by rejecting her arguments that BSCC was required to follow the reduction-in-force ("RIF") and dismissal policies outlined in the BSCC personnel handbook and by concluding that the decision in Golden v. Alabama State TenureCommission, 718 So.2d 73 (Ala.Civ.App. 1998), was inapplicable to her. The RIF policy states:
 "This policy applies to full-time employees of the College. It is the policy of [BSCC] that full-time employees may be separated from employment when the President declares a state of financial exigency which requires a significant reduction in the operating budget. This policy does not apply to summer contracts for faculty.
 "When reduction in force is necessary for the welfare of the college, a decision as to the order of personnel releases will be based upon one or more of the following criteria:
 "1. Whether or not an employee has obtained non-probationary status;
 "2. Seniority within a job classification such as faculty, support staff and administration; *Page 473 
 "3. Length of service within a job classification;
 "4. Performance evaluation ratings; and
 "5. Institutional requirements determined by the President.
 "The above are not listed in any order of priority.
 "Any personnel action taken pursuant to this policy shall be done in such a manner as to be consistent with the Alabama Fair Dismissal Act, other State and Federal laws as may apply, and any applicable rules of the State Board of Education.
 "The college administration will make every effort to assist any released employee in finding other employment.
 "Released employees may continue health, life, or other insurance for a period of time established by the Federal Consolidation Omnibus Budget Reconciliation Act (COBRA) of 1986."
Combs argued at the panel hearing and in the circuit court that before terminating her employment on the basis of proration and then replacing her with Vann, a probationary teacher, the RIF policy required BSCC to consider her nonprobationary status and "applicable rules of the State Board of Education." BSCC maintained, as it does on appeal, that it was not required to follow the RIF policy because that policy applied only to full-time employees and Combs was a part-time employee.
BSCC's contention that Combs was not a full-time employee appears to be inconsistent with its considering that the termination of Combs's employment implicated the FDA because the FDA appliesonly to "full-time" employees. The version of §36-26-100, Ala. Code 1975, that was in effect at the time of the termination of Combs's employment provided, in pertinent part:
 "The term `employees,' as used in this article, is deemed to mean and include all persons employed by . . . two-year educational institutions under the control and auspices of the State Board of Education . . . who are so employed as bus drivers, lunchroom or cafeteria workers, maids and janitors, custodians, maintenance personnel, secretaries and clerical assistants supervisors and all other persons not otherwise certified by the State Board of Education. Only full-time employees who are not otherwise covered by the state Merit System, the teacher tenure law, or other state statute at the time this article is adopted are intended to be covered by this article. Full-time employees include (a) adult bus drivers and (b) other employees whose duties require 20 or more hours in each normal working week of the school term, employing board holidays excepted. Substitute teachers and substitute employees are excluded from this article."
(Emphasis added.) BSCC's contention that Combs was not a full-time employee also appears to be inconsistent with its concession that Combs was a nonprobationary employee, because, for purposes of the FDA, in order to be a "nonprobationary" employee, one must first be an "employee," and "[o]nly full-time employees . . . are intended to be covered by" the FDA. See §36-26-100, supra.[2] *Page 474 
Evidently, BSCC considered Combs a full-time employee for purposes of being covered by the FDA, but a part-time employee for purposes of not being covered by its own RIF policy. Despite the confusion and uncertainty that might arise from such apparently inconsistent treatment, Combs makes no argument that, by considering her as full-time for one purpose, BSCC is estopped to assert that she is part-time for another purpose, and, therefore, we will not address the legal effect of the apparent inconsistency.
Combs argues that BSCC failed to follow its own dismissal policy, which, she claims, mandates that a nonprobationary teacher not be replaced by a probationary teacher. Under the heading "Dismissal," the BSCC personnel handbook states:
 "Dismissal of teachers and staff members, where necessary, will be done within the policies approved by the State Board of Education. A dismissal procedure similar to the one for tenured teachers will be utilized in terminations except the non-renewal of contract prior to commencement of the fourth academic year. Termination of personnel will be based on the Uniform Non-Discriminatory Employment Standards."
(Emphasis added.) Citing Golden v. Alabama State TenureCommission, supra, Combs insists that the panel improperly applied the law to the findings by concluding that it was permissible to replace her, a nonprobationary instructor, with Vann, a probationary instructor. In Golden, this court held that when the State Board of Education discontinued the automotive and small-engine repair program in the Department of Youth Services school district and canceled the tenured instructor's contract on the basis of financial "good cause," the Board was required to establish that it had not placed nontenured teachers in the same fields as those the instructor was qualified to teach. BSCC argued that the Golden decision is inapplicable to Combs because its holding was based on the law applicable to teachers who are covered by the Teacher Tenure Act ("TTA"), § 16-24-1 et seq., Ala. Code 1975, and, according to BSCC, Combs is not covered by the TTA.
At the panel hearing, BSCC cited Ex parte Athens StateCollege, 795 So.2d 709 (Ala. 2000), for the proposition that the TTA cannot be read in pari materia with the FDA. BSCC is correct that the Alabama Supreme Court stated, in AthensState College, that under the particular facts presented, the TTA was not useful in interpreting the FDA. The particular facts presented, however, were different from the facts presented in this case. In Athens State College, the terminated employee was a nonteacher. The court stated the issue to be decided as follows:
 "This case presents the narrow question whether the Fair Dismissal Act requires that a nonprobationary, nonteacher employee, whose position is terminated on the basis of a `justifiable decrease in jobs in the system,' be placed in another employment position currently held by a probationary, non-teacher employee, for which position *Page 475 
the nonprobationary employee is `qualified' but has never before held."
795 So.2d at 712 (emphasis added). The issue Combs raises is whether State Board of Education policies with respect to tenured teachers — policies that are referenced in the dismissal policy outlined in BSCC's personnel handbook — allow a nonprobationary teacher whose position is terminated on the basis of decreased funding due to proration to be replaced by a probationary teacher.
BSCC concedes that Combs was a nonprobationary instructor. Nevertheless, BSCC maintains that the employee-review panel correctly upheld the termination of Combs's employment because the termination was based on a "good and just cause" — the impact of proration on BSCC's budget.
Section 36-26-102, Ala. Code 1975, provides:
 "Upon the completing by the employee of [a three-year] probationary period, said employee shall be deemed employed on a nonprobationary status and said employee's employment shall there-after not be terminated except for failure to perform his or her duties in a satisfactory manner, incompetency, neglect of duty, insubordination, immorality, justifiable decrease in jobs in the system, or other good and just causes; provided, however, such termination of employment shall not be made for political or personal reasons on the part of any party recommending or voting to approve said termination."
In Ellenburg v. Hartselle City Board of Education,349 So.2d 605, 609-10 (Ala.Civ.App. 1977) (quoting 68 Am.Jur.2dSchools § 183 (1973)) (quoted with approval inLaidlaw Transit, Inc. v. Alabama Educ. Ass'n,769 So.2d 872, 884 (Ala. 2000), and Ex parte Alabama State TenureCommission, 555 So.2d 1071, 1074 (Ala. 1989)), this court defined "good cause" as follows:
 "`"[G]ood cause" . . . is by no means limited to some form of inefficiency or misconduct on the part of the teacher dismissed, but includes any ground put forward by a school committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system. Limited only by the statutory provision that they must be good and just causes, the jurisdiction and discretion to determine what these causes may be rests in the hands of the school authorities.'"
A decision that proration is a "good and just cause" for termination of an employee's employment subject to the FDA is not per se erroneous. However, if the employee is a nonprobationary teacher, as BSCC conceded that Combs was, then something more than "good cause" to dismiss her is required by BSCC's own dismissal policy referencing "policies approved by the State Board of Education" and "[a] dismissal procedure similar to the one for tenured teachers." See Golden v. Alabama StateTenure Comm'n, supra.
From the following factually erroneous conclusion in the majority opinion of the employee-review panel that BSCC
 "did not retain a probationary child care teacher while terminating the nonprobationary Linda Combs. Instead, [BSCC] rehired/retained a probationary administrator whose position Ms. Combs was not qualified to hold, and then incidentally assigned the teaching of one class at the Jasper branch to that person,"
it is apparent that the panel implicitly acknowledged that replacing a nonprobationary teacher with a probationary teacher was problematic. Thus, the panel took pains to explain that BSCC had not replaced a nonprobationary teacher with a *Page 476 
probationary teacher; instead, the panel stated, BSCC had replaced a nonprobationary teacher with a probationary administrator. The opinion of the dissenting member of the employee-review panel pointed out the error of the majority's conclusion that Vann was not a probationary teacher but a probationary administrator who was only incidentally assigned to teach a class for which Combs had been a nonprobationary teacher.
We reverse the judgment of the Walker Circuit Court and remand the cause with the following instructions: the circuit court shall remand the cause to the employee-review panel with instructions to redetermine the propriety of the termination of Combs's employment in light of the dismissal policy contained in the BSCC personnel handbook.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON and PITTMAN, JJ., concur in the result, without writing.
BRYAN, J., concurs in the result, with writing.
MURDOCK, J., dissents, with writing.
[1] The Legislature amended § 36-26-105, Ala. Code 1975, effective July 1, 2004, to bypass circuit court review of FDA cases and to provide for direct, discretionary review of FDA panel decisions by the Alabama Court of Civil Appeals. The Legislature further provided that the appellate review of such discretionary appeals was subject to the following standard of review:
 "The decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious, in which case the court may order that the parties conduct another hearing consistent with the procedures of [the FDA]."
§ 36-26-104(b). Because the decision of the FDA panel was rendered in this case on June 25, 2002, before the effective date of the amendment, we apply the standard of review previously applicable.
[2] Section 36-26-100 was amended, effective April 26, 2002, to cover "full-time instructors as defined by the State Board ofEducation " at "two-year educational institutions under the control and auspices of the State Board of Education." (Emphasis added.) See Ala. Acts 2002, Act No. 508, § 1. The retroactivity of § 36-26-100, as amended, was not argued to the panel, to the circuit court, or to this court on appeal. We will, therefore, not address that issue.
Whether the decision of our supreme court in Ex parteMcLeod, 841 So.2d 260, 264 (Ala. 2001) (released on June 22, 2001), is applicable to Combs was also not argued to the panel, to the circuit court, or to this court on appeal. Ex parteMcLeod decided that whether a community-college instructor had achieved full-time nonprobationary status was determined by reference to the FDA. The McLeod decision, however, was based on the law-of-the-case doctrine and it does not stand for the blanket proposition that the FDA governs whether a community-college instructor is full-time or nonprobationary.