984 So.2d 1161 (2007)
Ex parte Laura WILSON.
In re Laura Wilson
v.
Madison County Board of Education.
1051697.
Supreme Court of Alabama.
November 2, 2007.
*1163 Stan McDonald, Huntsville; Frederick L. Fohrell and Robert Lockwood of Wilmer & Lee, P.A., Huntsville; and Sam Heldman of Gardner, Middlebrooks, Gibbons, Kittrell, Olsen, Walker & Hill, P.C., Washington, D.C., for petitioner.
Cynthia K. Thompson of Johnston, Moore, Maples & Thompson, Huntsville, for respondent.
David R. Boyd, Dorman Walker, and JoClaudia Moore of Balch & Bingham, LLP, Montgomery, for amicus curiae Alabama Association of School Boards, in support of the respondent.
Gregory B. Stein of Stein, Brewster & Pilcher, L.L.C., Mobile, for amicus curaie Alabama Education Association, in support of the petitioner.
STUART, Justice.
This case involves interpretation of certain provisions of the Alabama Teacher Tenure Act, § 6-24-1 et seq., Ala.Code 1975, as amended by Act No. 2004-566, Ala. Acts 2004. This Court granted the petition for the writ of certiorari to review the decision of the Court of Civil Appeals in light of these changes to the statute.
Laura Wilson, a tenured teacher, taught physical education and served as the cheerleading sponsor for the junior varsity and varsity cheerleading squads at Buckhorn High School, which is in the district of the Madison County Board of Education ("the Board"). After a parent whose child had been removed from the squad filed a complaint, the superintendent of the Board conducted an investigation and decided there were grounds to terminate Wilson's employment. In his March 11, 2005, letter informing Wilson that he intended to recommend the cancellation of Wilson's teaching contract, the superintendent alleged that Wilson's employment should be terminated on the grounds of "insubordination, neglect of duty, failure to perform duties in a satisfactory manner, or other good and just cause." See § 16-24-8, Ala.Code 1975. In support of those allegations, the superintendent set forth 14 separate charges that formed the bases of his recommendation to cancel Wilson's teaching contract. Those charges were the result of the investigation initially instigated by the complaining parent; however, approximately one-half of those charges did not arise from the parent's complaint but were discovered during the course of the resulting investigation. The 14 charges were as follows:
"1. Accepting the coaching supplement for junior varsity cheerleading at Buckhorn High School, while allowing Cassie Watson to function as junior varsity coach for approximately 3½ years.
"2. Arranging for Cassie Watson to coach the junior varsity squad at your gym after school in January of 2005 after being directed to stop.
"3. Operating a personal gymnastics business for profit in the gymnasium of Buckhorn High School during the summer of 2003 and from February 2004 to October/November 2004.
"4. Altering the payee on a check or checks made payable to Buckhorn High School by marking through Buckhorn High School and adding your name and depositing those check(s) into your personal account.
"5. Failing to comply with federal and state regulations or laws on students' daily access to the lunchroom and *1164 continuing to do so after directives were issued to the school.
"6. Charging a non-refundable usage fee to Buckhorn High School cheerleaders in violation of Madison County Board of Education policy.
"7. Use of a demerit system, which excessively punishes students who miss practice in violation of Madison County Board of Education policy.
"8. Inconsistent punishment of students in the assessment of demerits and the award of free demerit passes.
"9. Overcharging some students and undercharging other students who participate on the competitive cheerleading squad.
"10. Use of cheerleader funds to pay expenses of individuals who are not the sponsor or a member of the squads to attend National Competitions.
"11. Violations of the Madison County Board of Education's fundraiser policy by having a greater number of fundraisers than allowed by Madison County Board of Education policy.
"12. Failure to follow the Local School Accounting Manual and board policy as related to receipts and disbursements from the cheerleader funds for the past 2 years.
"13. Removal of [the complaining parent's child] from the junior varsity competitive squad for non-payment when another student was allowed to pay late and wasn't required to pay the full amount.
"14. Loss of $5,970 in cheerleader funds during the 2003-2004 school year."
The superintendent presented his recommendation to the Board, which conducted a conference, requested by Wilson, to determine if Wilson's employment should be terminated. The Board, by a 4-0 vote, agreed with the superintendent's recommendation to terminate Wilson's employment. Wilson then requested and received a de novo hearing before an impartial hearing officer to contest the decision, pursuant to § 16-24-10(a), Ala.Code 1975. After receiving ore tenus and documentary evidence, the hearing officer entered a decision in which he made specific findings of fact, reversed the Board's decision to terminate Wilson's employment, and did not order any form of discipline for Wilson.
The Board appealed the hearing officer's decision to the Court of Civil Appeals, pursuant to Section 16-24-10(b), Ala.Code 1975. The Court of Civil Appeals reversed the decision of the hearing officer. Madison County Bd. of Educ. v. Wilson, 984 So.2d 1153 (Ala.Civ.App.2006). We affirm.

Legal Issues
Wilson presents several issues of first impression concerning the 2004 amendments to the Alabama Teacher Tenure Act, which implemented a new system for resolving disputes relating to the employment termination of tenured teachers.
"1. Under [the] limited scope of review provided by the Amended [Teacher Tenure] Act, can the Court of Civil Appeals restrict the `inquiries' that may be conducted by arbitrators?[1]
"2. Did the Court of Civil Appeals err by finding that a hearing is for the purpose of `determining whether the Board improperly canceled' a teacher's contract?
"3. Did the Court of Civil Appeals err in determining that a `ground' for commencing termination proceedings under Section 16-24-8 should have been utilized *1165 by the arbitrator as the standard for rendering a decision under Section 16-24-10?
"4. Does the Court of Civil Appeals possess the power to reverse an arbitrator for failing to follow the applicable law?
"5. Could the Court of Civil Appeals reverse the arbitrator for applying an incorrect legal standard when the arbitrator was not in `manifest disregard of the law'?"
Wilson's arguments in her brief essentially focus on her belief that the Court of Civil Appeals misconstrued the new administrative process for termination of employment established in the recent amendments to the Alabama Teacher Tenure Act.
Wilson first argues that the Alabama Court of Civil Appeals improperly applied standards from the Alabama Teacher Tenure Act as it existed before the 2004 amendment in reviewing this case because, she says, this case is governed by the Alabama Teacher Tenure Act, as amended in 2004 by Act No. 2004-566, which amended § 16-24-1 et seq., Ala.Code 1975 ("the new Act"). Specifically, Wilson asserts that four statements by the Court of Civil Appeals in its opinion are evidence that that court erroneously applied standards from the Alabama Teacher Tenure Act as it read prior to its amendment in 2004 ("the old Act") in reversing the hearing officer's decision:
"1. `On April 7, 2005, the Board terminated Wilson's employment.' [984 So.2d at 1155.] Under Section 16-24-9, the Board possesses no power to terminate anybody. Instead, the Board can decide that a cancellation should be `effectuated,' but only the arbitrator [hearing officer] can render a decision on cancellation.
"2. `Wilson appealed pursuant to § 16-24-10 of the Teacher Tenure Act. . . .' [984 So.2d at 1155.] The hearing before the arbitrator is not an `appeal.' Instead, it is a `de novo hearing,' where evidence is presented. The only discussion of an `appeal' in the new Act is the authorization of an appeal to the Court of Civil Appeals. Ala.Code § 16-24-10(b).
"3. `[H]e made a number of factual findings, reversed the Board's termination decision, and ordered that Wilson be returned to her teaching position. . . .' [984 So.2d at 1155.] (emphasis added). Nothing in the New Act talks about affirming or reversing, because the arbitrator [hearing officer] is not conducting an appeal. Instead, the arbitrator conducts a `de novo hearing' and decides in the first instance what `actions [if any] should be taken relative to the employee.' Ala.Code § 16-24-10(a).
"4. `In this case, the hearing officer should have applied Alabama's Teacher Tenure Act in determining whether the Board improperly canceled Wilson's teaching contract.' [984 So.2d at 1160.] (emphasis added). As discussed above, the Board does not possess the power to cancel a contract. Only the hearing officer possesses that power."
(Wilson's brief at 22-24.)
The Board responds that Wilson has focused only on part of § 16-24-10(a) and has overlooked § 16-24-8, the grounds for termination; § 16-24-9, the procedure for cancellation of contracts; and other parts of § 16-24-10, the appeal of the decision of the board of education to a hearing officer. The Board further points out that county boards of education are given the authority to appoint and remove teachers in § 16-8-23, Ala.Code 1975, subject to the teacher's tenure rights in Chapter 24 of Title 16.
*1166 Section 16-24-8, Ala.Code 1975,[2] sets forth the statutory grounds for canceling an employment contract with a teacher on continuing-service status, that is, a "tenured teacher": "incompetency, insubordination, neglect of duty, immorality, failure to perform duties in a satisfactory manner, justifiable decrease in the number of teaching positions or other good and just cause, but cancellation may not be made for political or personal reasons."
Section 16-24-9 states: "(a) An employment contract with a teacher on continuing service status may be cancelled only in the following manner. . . ." The section goes on to provide the process for giving notice to the employee and the procedure by which to request a conference with the board before the board votes on the superintendent's recommendation. The statute provides that after the conference "the board shall determine whether such cancellation shall be effectuated." § 16-24-9(a), Ala.Code 1975. Section 16-24-9(b) provides that "[r]egardless of whether or not the employee elects to have a conference with the employing board, if the board votes to cancel the teacher's contract, the superintendent shall give notice to the teacher. . . ." The remainder of the section provides the process of notifying the teacher of the employing board's decision and the process by which the teacher can "contest the board's decision." If no contest is filed, "the board's decision shall be final." § 16-24-9(b), Ala.Code 1975. Likewise, if the employing board votes not to follow the superintendent's recommendation, the teacher's contract cannot be canceled. Clearly, a board of education does possess the power to cancel a tenured teacher's contract under the new Act.
Wilson objects to the Court of Civil Appeals' use of the word "appeal" with reference to a teacher's right to "contest the board's decision" at a hearing before a hearing officer. Although the word "contest" might be more precise, the action taken is an "appeal" in the general sense of subjecting the board's decision to review by the hearing officer. Further, the Court of Civil Appeals recognized that the hearing was de novo when it used the language "after receiving ore tenus and documentary evidence" in its opinion. 984 So.2d at 1155.
Wilson argues that the Court of Civil Appeals erred when it stated that the hearing officer "reversed the Board's termination decision." 984 So.2d at 1155. She reiterates her argument that a board has no authority to cancel or terminate a tenured teacher's contract. This position, however, is incorrect.
Section 16-24-10(a) mandates that the hearing officer "determine which of the following actions should be taken relative to the employee: Cancellation of the employment contract, a suspension of the employee, with or without pay, a reprimand, other disciplinary action, or no action against the employee." The Board in its brief to this Court recognizes this authority, as does the Court of Civil Appeals in its opinion. When a hearing officer chooses an option other than the cancellation voted for by a board of education, the hearing officer has "reversed the decision" of the board.
Wilson asks this Court to address the following specific questions:
"Did the Court of Civil Appeals err by finding that a hearing is for the purpose of `determining whether the Board improperly canceled' a teacher's contract? "Did the Court of Civil Appeals err in determining that a `ground' for commencing termination proceedings under

*1167 Section 16-24-8 should have been utilized by the arbitrator as the standard for rendering a decision under Section 16-24-10?
"Does the Court of Civil Appeals possess the power to reverse an arbitrator for failing to follow the applicable law?
"Could the Court of Civil Appeals reverse the arbitrator for applying an incorrect legal standard when the arbitrator was not in `manifest disregard of the law'?"
Each of these questions requires that we first answer the threshold question: What law shall the hearing officer apply in conducting a de novo hearing and rendering a decision?
Section 16-24-10(a) provides, in pertinent part:
"The hearing officer shall conduct a de novo hearing and shall render a decision based on the evidence and/or information submitted to the hearing officer. The hearing officer shall determine which of the following actions should be taken relative to the employee: Cancellation of the employment contract, a suspension of the employee, with or without pay, a reprimand, other disciplinary action, or no action against the employee. The hearing officer shall render a written decision, with findings of fact and conclusions of law, within 30 days after its hearing."
Section 16-24-10(b), Ala.Code 1975, a part of the new Act, provides that "[a]ll appeals of a final decision of the hearing officer shall lie with the Alabama Court of Civil Appeals" and that "[t]he decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious, in which case the court may order that the parties conduct another hearing consistent with the procedures of this article." The Court of Civil Appeals found that the hearing officer failed to apply the applicable law to the facts of this case; therefore, it reasoned, his decision was arbitrary and capricious, and a new hearing was required.
As an example, the Court of Civil Appeals noted that the hearing officer found that there was no dispute that the Board had proven charge number 3  that Wilson had used the school gymnasium to operate a for-profit gymnastics business  and that "`the Constitution, and the Code of Alabama[3] was violated. No question thereon exists.'" 984 So.2d at 1156. The hearing officer went further, finding that questions remained as to whether charge number 3 was a valid basis for seeking the cancellation of Wilson's teaching contract, specifically, "`[1] whether [Wilson] hid the fact from her superiors, [2] [whether] others in the employ of the [Board are] acting or performing in a similar fashion, and [3] [whether Wilson is] the only one guilty of Code of Alabama violations.'" 984 So.2d at 1157. The Court of Civil Appeals agreed with the Board that the hearing officer improperly created a new standard for determining whether "other good and just cause" existed for the cancellation of a tenured teacher's employment contract pursuant to the new Act. The Court of Civil Appeals stated:
"In his decision, the hearing officer maintained that the parties agreed that the issues before him should be framed *1168 as `[d]id the [Board] have just cause to terminate the employment contract of [Wilson]?' and `[i]f not, what shall the remedy be?' Given the parties' agreement to the admission into evidence of the relevant provisions of the Teacher Tenure Act and the parties' references to that act during the discussion of the questions to be resolved by the Board, we do not necessarily agree with the conclusion that the parties stipulated that the primary issue before the hearing officer was whether the Board had `other good and just cause' to cancel Wilson's teaching contract. The hearing officer, in reaching his decision, based the decision on his determination that there was no `just cause' for the cancellation of Wilson's teaching contract. However, the hearing officer also stated that the November 18, 2005, decision was also intended to address the other grounds set forth in the March 11, 2005, letter and prosecuted by the Board during the hearing of this matter.
"As stated earlier in this opinion, under the Teacher Tenure Act, a tenured teacher's employment contract may be canceled for, among other reasons, `other good and just cause.' § 16-24-8, Ala. Code 1975. This court has addressed that basis for the cancellation of a contract by stating:
"`Although no Alabama court has provided a detailed definition of "other good and just cause," [under Alabama's Teacher Tenure Act,] 68 Am. Jur.2d Schools § 183 states:
"`" . . . Indeed, it has been said . . . `good cause' in a statute of this kind [the Teacher Tenure Act] is by no means limited to some form of inefficiency or misconduct on the part of the teacher dismissed, but includes any ground put forward by a school committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system. Limited only by the statutory provision that they must be good and just causes, the jurisdiction and discretion to determine what these causes may be rests in the hands of the school authorities."'
"Ellenburg v. Hartselle City Bd. of Educ., 349 So.2d 605, 609-10 (Ala.Civ. App.1977) (emphasis added). That definition of `other good and just cause' has been cited with approval by our supreme court in Laidlaw Transit, Inc. v. Alabama Education Ass'n, 769 So.2d 872, 884 n. 4 (Ala.2000), and Ex parte Alabama State Tenure Commission, 555 So.2d 1071, 1074 (Ala.1989), and by this court in Combs v. Wade, 957 So.2d 464, 475 (Ala.Civ.App.2005), and Rogers v. Alabama State Tenure Commission, 372 So.2d 1313, 1313-14 (Ala.Civ.App.1979).
"The hearing officer did not refer to the above-cited cases that define `other good and just cause' under Alabama's Teacher Tenure Act. In reaching his determination, the hearing officer applied a different standard, stating:
"`Many years ago, back in the 1980's, arbitrator Carroll R. Daugherty put forth a set of seven tests to determine whether or not "just cause" did or did not exist. The seven tests, all of which required an affirmative answer in order to establish "just cause," has become the standard under which most arbitrators operate. Said questions take the following form:
"`1. Did the employer give to the employee forewarning of possible or probable consequences of the employee's conduct?

*1169 "`2. Was the employer's rule or managerial order reasonably related to the orderly, efficient and safe operation of the employer's business and the performance that the employer might properly expect of the employee?
"`3. Did the employer, before administering the discipline, make an effort to discover whether the employee did in fact violate or disobey a rule or order of management?
"`4. Was the employer's investigation conducted fairly and objectively?
"`5. At the investigation was substantial evidence or proof obtained that the employee was guilty as charged?
"`6. Has the employer applied its rules, orders and penalties evenhandedly and without discrimination to all employees?
"`7. Was the degree of discipline administered by the employer in a particular case reasonably related to the seriousness of the employee's proven offenses and the record of the employee in his service to the employer?
"`A "NO" answer to any one or more of the questions was considered an indication that just cause either was not satisfied or at least was weakened in that some arbitrary, capricious or discriminatory element was present.'
"The seven-part test applied by the hearing officer was formulated by an arbitrator who, given the nature of the cases in which he is mentioned, seems to have established a test for determining `just cause' in the context of disputes concerning discipline under a collective-bargaining agreement. See Summit County Children Servs. Bd. v. Communication Workers of America, (No. 22697, Feb. 1, 2006) (Ohio Ct.App.2006) (not reported), appeal accepted for review, 109 Ohio St.3d 1505, 849 N.E.2d 1027 (2006) (table); American Fed'n of State, County & Mun. Employees, Dist. Council 88, AFL-CIO v. City of Reading, 130 Pa. Commw. 575, 568 A.2d 1352 (1990); Greater Altoona Career & Tech. Ctr. Educ. Ass'n v. Greater Altoona Career & Tech Ctr., 46 Pa. D. & C. 4th 115 (2000); see also Conoco, Inc. v. Oil, Chem. & Atomic Workers Int'l Union, 26 F.Supp.2d 1310 (N.D.Okla.1998)(citing test as established by arbitrator Carroll Daugherty in Whirlpool Corp. v. International Union of Elect., Radio, & Mach. Workers Local 808, 58 Lab. Arb. (BNA) 421 (1972)). In cases involving a collective-bargaining agreement, the decision of the arbitrator is not to be overturned if it draws `its essence from the collective bargaining agreement.' Summit County Children Servs. Bd. v. Communication Workers of America, supra; and American Fed'n of State, County & Mun. Employees, Dist. Council 88, AFL-CIO v. City of Reading, 130 Pa. Commw. at 580, 568 A.2d at 1354. However, an arbitrator may determine the issue of `good cause' when that phrase is not defined in the collective-bargaining agreement, but the arbitrator must apply the applicable legal standard in reaching its decision. Greater Altoona Career & Tech. Ctr. Educ. Ass'n v. Greater Altoona Career & Tech. Ctr., supra."
___ So.2d at ___.
Wilson and amicus curiae Alabama Education Association in support of Wilson,[4] *1170 urge us to reverse the judgment of the Court of Civil Appeals and uphold the findings of fact and conclusions of law of the hearing officer. They argue that the hearing officer's authority under § 16-24-10 is virtually unlimited and that the hearing officer was free to adopt the legal standard from collective-bargaining cases because neither the new Act nor caselaw provided any guidance as to what law should be applied. Wilson also argues that, even if the hearing officer erred in adopting this standard from collective-bargaining cases as "the law" in this case, there was a complete absence of any law for the hearing officer to disregard in this case, because no Alabama appellate court had interpreted the new Act at the time the hearing officer rendered his decision. Thus, the hearing officer could not have manifestly disregarded the law; therefore, the Court of Civil Appeals had no authority to reverse his decision.
We disagree with the position taken by Wilson. The hearing officer has broad authority under the new Act. The hearing officer conducts a de novo hearing, that is, a completely new hearing. Based upon the evidence and/or information submitted at the hearing, the hearing officer determines which of the following actions should be taken relative to the employee: cancellation of the employment contract; suspension of the employee, with or without pay; a reprimand; other disciplinary action; or no action. § 16-24-10(a), Ala.Code 1975; Ex parte Dunn, 962 So.2d 814 (Ala.2007). No party disputes that the hearing officer has this authority. The hearing officer also has the responsibility of rendering, within 30 days of the hearing, a written decision with findings of fact and conclusions of law. The hearing officer's final decision is subject to appeal to the Alabama Court of Civil Appeals and shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious under § 16-24-10(b), Ala. Code 1975.
What law must the hearing officer apply in reaching his or her decision? He or she must apply Alabama law as set forth in the new Act and court decisions interpreting the new Act and provisions of the old Act that remain unchanged by the 2004 amendments.
Clearly, the hearing officer was not authorized to import employment law from collective-bargaining cases and, based upon those cases, to establish a new standard of "just cause for termination" of tenured teachers with certain principles such as like discipline of co-employees and "forewarning of possible or probable consequences of the employee's conduct," which are not required by either the old Act or the new Act.
Thus, we now answer the questions posed by Wilson. The Court of Civil Appeals did not err in finding the hearing officer's action arbitrary and capricious and reversing his decision and ordering a new hearing. The Court of Civil Appeals does have the authority to reverse the decision of the hearing officer for failing to follow the applicable law, because the failure to follow the applicable law renders the hearing officer's decision arbitrary and capricious. The Court of Civil Appeals did not err in finding that the hearing was for the purpose of "determining whether the Board improperly canceled" a teacher's employment contract; a hearing officer must apply Alabama teacher-tenure law to the facts to determine whether the board improperly canceled the teacher's contract. The new Act gives guidance as to the issues for decision by the hearing officer. Issues that may be considered include, but are not limited to: (1) Whether the evidence proves a ground or grounds asserted for cancellation of the teacher's contract; *1171 (2) Whether there are any improper motives for cancellations[5] under § 16-24-8, Ala Code 1975, such as political or personal reasons; and (3) Whether cancellation of the teacher's employment contract or one of the other alternatives under § 16-24-10(a) is the appropriate penalty based upon the law and the facts.
We next address the question whether the Court of Civil Appeals erred in determining that one of the "grounds" for commencing termination proceedings listed in § 16-24-8 should have been used by the hearing officer as a reason for rendering a decision under § 16-24-10. After determining that the issue before him was "whether there was just cause for cancellation of the teacher's contract," the hearing officer incorrectly adopted from collective-bargaining cases a seven-part test for "just cause to terminate." In addressing that error, the Court of Civil Appeals correctly noted that Alabama caselaw provides the definition for "other good and just cause" under § 16-24-8, Ala.Code 1975:
"Cancellation of an employment contract with a teacher on continuing service status may be made for incompetency, insubordination, neglect of duty, immorality, failure to perform duties in a satisfactory manner, justifiable decrease in the number of teaching positions or other good and just cause, but cancellation may not be made for political or personal reasons."
"Other good and just cause" in this section permits boards of education to cancel contracts of tenured teachers for reasons not enumerated in the section, provided the unenumerated reasons are good and just. This is the only use of "just cause" in the new Act. One of the hearing officer's considerations will be whether one or more of the grounds asserted for termination is established by the evidence. The inquiry by the hearing officer will generally include the issues heretofore mentioned and may include others depending upon the circumstances of the case, but the hearing officer may not expand the inquiry beyond the bounds of Alabama teacher-tenure law.

Conclusion
The hearing officer's application of standards of "just cause for termination" from collective-bargaining cases to Wilson's case resulted in a decision that was arbitrary and capricious. Therefore, the Court of Civil Appeals correctly reversed his decision and remanded the case for a new hearing. We affirm its judgment. The new hearing shall be conducted pursuant to the provisions of the new Act.
AFFIRMED.
SEE, BOLIN, and PARKER, JJ., concur.
STUART, J., concurs specially.
LYONS, WOODALL, and SMITH, JJ., concur in part and concur in the result.
COBB, C.J., dissents.
MURDOCK, J., recuses himself.
STUART, Justice (concurring specially).
Cases involving the cancellation of a teacher's employment contract must be considered on a case-by-case basis. A teacher maintaining that the motive behind the cancellation of his or her employment contract was personal or political must plead the defense and establish by evidence the viability of that defense at *1172 the hearing held pursuant to § 16-24-10(a), Ala.Code 1975. As the main opinion states and as Justice Lyons urges in his special writing, evidence of lesser discipline of other employees for like offenses may establish a viable defense and may be considered at a hearing if the defense is properly pleaded. However, evidence that other employees have been disciplined less severely for like offenses is not a defense per se and does not necessarily establish that the motive for the cancellation of the teacher's employment contract was personal or political. For example, disparate discipline of two employees for like offenses might be justified where one employee had an exemplary prior employment record and the other had had numerous prior disciplinary actions. Disparate discipline of the two employees, although they committed "like offenses," may be warranted, and the fact that disparate discipline was administered does not establish a defense per se of an improper motive for contract cancellation. Thus, a variety of factors may affect the appropriate discipline for a particular violation by an employee, and merely because two employees received disparate discipline for like offenses is not necessarily a viable defense or an indicator of an improper motive for cancellation of a teacher's employment contract. Furthermore, even a showing of disparate discipline of similarly situated employees as to the same ground for cancellation of a teacher's contract may have little relevance in situations where numerous grounds were proven for cancellation of the teacher's employment contract.
LYONS, Justice (concurring in part and concurring in the result).
I concur fully in the main opinion with one exception.
Section 16-24-8, Ala.Code 1975, provides:
"Cancellation of an employment contract with a teacher on continuing service status may be made for incompetency, insubordination, neglect of duty, immorality, failure to perform duties in a satisfactory manner, justifiable decrease in the number of teaching positions or other good and just cause, but cancellation may not be made for political or personal reasons."
Reliance upon the prohibition against cancellation of a teacher's employment contract for political or personal reasons as the basis for a defense to the stated ground for termination is in the nature of a confession and avoidance. In effect, one relying on this portion of the statute admits that she is guilty of some misfeasance but argues that she is being singled out while others guilty of the same misfeasance are not being charged, so that the adverse action against her is motivated by either personal or political reasons. A confession and avoidance is the classic example of an affirmative defense. See, e.g., Foley v. Pioneer Mining & Mfg. Co., 144 Ala. 178, 182, 40 So. 273, 274-75 (1906) ("There is a well defined distinction between assumption of risk and contributory negligence, still both of these defenses are in confession and avoidance of the plaintiff's action, and cannot be availed of under the general issue, but must be specially pleaded."). The main opinion, at note 5, correctly states: "The existence of an improper motive for termination, a political or personal reason, is in the nature of a defense. The teacher asserting such a motive must place the motive `at issue' by specifically pleading the facts alleged to establish an improper motive." 984 So.2d at 1171.
However, the main opinion also states:

*1173 "Clearly, the hearing officer was not authorized to import employment law from collective-bargaining cases and, based upon those cases, to establish a new standard of `just cause for termination' of tenured teachers with certain principles such as like discipline of co-employees and forewarning of possible or probable consequences of the employee's conduct,' which are not required by either the old Act or the new Act."
984 So.2d at 1170.
I agree with the conclusion in the main opinion that the hearing officer was not authorized to import employment law not grounded in Alabama law. However, evidence related to "like discipline of co-employees" and "forewarning of possible or probable consequences of the employee's conduct" could be germane to an affirmative defense of personal or political motivation pleaded with proper notice to the board. For example, if other employees had been allowed to engage openly in similar conduct over a long period of time without so much as a hint of a warning of impropriety from superiors, and one employee suddenly was the object of the full force of the board's ire, while the shortcomings of others continued to be ignored, that evidence would be relevant to improper motive.
My problem with the proceedings below arises from the failure of Wilson to assert in advance of the hearing that her firing was motivated by personal or political reasons. She had the benefit of a confession and avoidance without asserting it as an affirmative defense. Hence, the board was blindsided by the hearing officer's interest in facts that would support a finding of lack of just cause because of absence of like discipline of co-employees and failure to forewarn of possible or probable consequences of the employee's conduct. Because the main opinion negatively characterizes evidence of "like discipline of co-employees" and "forewarning of possible or probable consequences of the employee's conduct" that was admissible under the standard applied by the hearing officer, I am concerned that we might be understood as embracing a rule that prevents the admission of such evidence even when properly pleaded.
WOODALL and SMITH, JJ., concur.
COBB, Chief Justice (dissenting).
I respectfully dissent. In this case the hearing officer, a former school-board president who was jointly selected by all the parties, determined that "all of the charges levied against Laura Wilson grow out of her actions, not as a physical education teacher but as the school's cheerleading coach, an extra-curricular compensated position." The hearing officer conducted a thorough hearing and made detailed findings concerning the charges. After addressing the charges point by point and noting that "Ms. Wilson was not being secretive and that her building principal knew what was going on and gave continual tacit approval," the hearing officer concluded that although the Morgan County Board of Education ("the Board") had the authority to terminate Wilson's employment as the coach of the cheerleading squad at Buckhorn High School, it did not have just cause to terminate her employment as a teacher. I believe that a proper reading and application of the law to this case requires this Court to reverse the Court of Civil Appeals' decision and remand the case for that court to affirm the hearing officer's determination.
The hearing officer's authority in this regard is set out in Ala.Code 1975, § 16-24-10(a):

*1174 "The hearing officer shall conduct a de novo hearing and shall render a decision based on the evidence and/or information submitted to the hearing officer. The hearing officer shall determine which of the following actions should be taken relative to the employee: Cancellation of the employment contract, a suspension of the employee, with or without pay, a reprimand, other disciplinary action, or no action against the employee."
(Emphasis added.) The appellate review of the hearing officer's determination in this case is controlled by Ala.Code 1975, § 16-24-10(b), which states, in pertinent part:
"The decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious, in which case the court may order that the parties conduct another hearing consistent with the procedures of this article."
(Emphasis added.) Of particular note in our review is the fact that the only standard to be applied is whether the hearing officer's determination is arbitrary and capricious. That is, unlike many other legislative enactments that prescribe additional bases upon which a decision of an agency or hearing officer may be reviewed,[6] the statute that controls our review in this case permits no other standard. Because we accord the legal conclusions of the Court of Civil Appeals no presumption of correctness in our certiorari review, Ex parte Wade, 957 So.2d 477 (Ala.2006), this Court's review of the opinion of the Court of Civil Appeals must consider only whether the hearing officer's determination was arbitrary and capricious.
*1175 The term "arbitrary and capricious" has been defined by the United States Supreme Court in the context of the appellate review of the actions of an agency, or, in this case, of a hearing officer, as follows:
"[A]n agency rule would be arbitrary or capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."
Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). See also Sierra Club, Inc. v. Leavitt, 488 F.3d 904 (11th Cir. 2007); and Titan Tire of Natchez, Inc. v. Mississippi Comm'n on Envtl. Quality, 891 So.2d 195, 201 (Miss.2004) ("`[a]n act is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone,  absolute in power, tyrannical, despotic, non-rational,  implying either a lack of understanding of or a disregard for the fundamental nature of things. . . . An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles."' (quoting Electronic Data Sys. Corp. v. Mississippi Div. Of Medicaid, 853 So.2d 1192, 1205 (Miss.2003))). Although the courts of this state have not presented such detailed definitions in the context of a hearing officer's review, the term "arbitrary and capricious" has been discussed as what is not permissible in the exercise of judicial discretion  that the correct exercise of judicial discretion is "`not the indulgence of a judicial whim, but the exercise of judicial judgment, based on facts and guided by law, or the equitable decision of what is just and proper under the circumstances."' Shiv-Ram, Inc. v. McCaleb, 892 So.2d 299, 321-22 (Ala.2003) (Houston, J., dissenting and quoting Black's Law Dictionary 467 (6th ed.1990)). See also Goodyear Tire & Rubber Co. v. Vinson, 749 So.2d 393 (Ala.1999); and Coleman v. Pepper, 159 Ala. 310, 49 So. 310 (1909). Thus, the understanding of the term "arbitrary and capricious" in the jurisprudence of this State is in conformity with the authorities cited above and with the general definition set out in Black's Law Dictionary 113 (8th ed.2004): the term "arbitrary" denotes a decision "founded on prejudice or preference rather than on reason or fact."
The main opinion approves the rationale of the Court of Civil Appeals in reversing the hearing officer's determination and remanding the case for a new hearing stating that the hearing officer failed to properly apply the law. Of course, this is not the standard by which the Court of Civil Appeals was required to review the hearing officer's determination. The main opinion purports to cure that defect by explicitly stating the implicit holding of the Court of Civil Appeals that the hearing officer's decision, based on the seven-part test for determining whether there was just cause for the termination of Wilson's employment, was arbitrary and capricious. The opinion makes this assertion without benefit of a discussion of case authority, applying a definition of the term "arbitrary and capricious" to the hearing officer's analysis, possibly because the application of a definition such as the one noted above would not support the reversal of the hearing officer's determination. As the main opinion recognizes and the Court of Civil Appeals recognized, the courts of this State have noted with approval that "good and just cause" for terminating a teacher's *1176 employment includes anything that is not arbitrary, irrational, unreasonable, or irrelevant to maintaining an efficient school system. Laidlaw Transit, Inc. v. Alabama Educ. Ass'n, 769 So.2d 872 (Ala. 2000); and Ellenburg v. Hartselle City Bd. of Educ., 349 So.2d 605 (Ala.Civ.App.1977). However, these terms are not invested with any further meaning. The legislature's statutory plan for reviewing the termination of the employment of tenured teachers leaves it to the hearing officer to supply that meaning based upon procedures set out in §§ 16-24-1 through 16-24-22, Ala.Code 1975.
The fundamental duty of this Court in applying § 16-24-10 is to give effect to the intent of the legislature based upon the plain language of the statute. Perry v. City of Birmingham, 906 So.2d 174 (Ala. 2005); and Douglas v. King, 889 So.2d 534 (Ala.2004). The plain language of § 16-24-10 vests the hearing officer with the authority to determine what constitutes good cause in light of the evidence presented in each particular case. In this case, and under the applicable law, that means that the hearing officer had the responsibility of determining whether the Board's proposal to terminate Wilson's employment as a teacher was arbitrary, irrational, unreasonable, or irrelevant to maintaining an efficient school system. Moreover, in the context of our review it is the plain duty of the Court of Civil Appeals and this Court under § 16-24-10 to affirm that decision unless it is arbitrary and capricious. Neither this Court nor Court of Civil Appeals is authorized to substitute a different standard, such as that the hearing officer "misapplied the law." I submit that the hearing officer's reference to a seven-part test as an aid in making this evaluation was not arbitrary and capricious so long as it was not "founded on prejudice or preference rather than on reason or fact." Black's 113. In fact, the hearing officer's articulation of a rational means of evaluating the charges against Wilson complies exactly with his duty under the statute. The hearing officer was not arbitrary or capricious in considering whether the Board applied its rules evenhandedly and without discrimination to all its employees or whether the Board's proposed discipline was reasonably related to the seriousness of an offense as factors in determining whether there was good cause to terminate Wilson's employment. These are exactly the sorts of considerations that are designed to ascertain and avoid decisions based upon prejudice or bias.
For example, the hearing officer discussed two of the more serious charges against Wilson that arose from the loss of certain funds raised for the cheerleading program as follows:
"As the next two charges involve a single incident, allegations # 12 and 14 should be and must be treated as one. Allegation or Charge # 12 pertains to Laura Wilson's failure to follow the `Local School Accounting Manual' and Board policy relating to receipts and disbursements of cheerleader funds for the past two years. Allegation or Charge # 14 involves a 2003-2004 event when Laura Wilson misplaced or lost some $5,970.00 of fund raising proceeds.
"As indicated earlier, herein, during 2003-2004, on October 28, 2003 the cheerleaders under the auspices of the school and [Wilson] conducted a fund raiser. Same was successful in netting some $5,970.00. The `Local School Accounting Manual' consists of some 63 pages. A section thereof is headed `receipting money' and contains statements therein covering (1) a `deposit policy' which states: `At the end of each day all monies on hand in excess of $100.00 should be deposited with the bank as well as (2) an emphasized statement directing *1177 that `the Principal is directly responsible in the handling of monies received. It is the ultimate responsibility of the Principal for any shortages resulting from errors or otherwise in the handling of school monies.'
"Admittedly, Ms. Wilson did not make the deposit on the 18th of October, a Saturday, a day on which banks are usually closed, nor on Monday, October 20th. Precisely when she realized she hadn't deposited the funds and/or when she realized the funds were missing is not clear. Again, undisputed is the fact that Ms. Wilson did not report the incident until October 28th. She and the Principal reported it on November 5th to the sheriff but not to the school's Administration.
"Laura Wilson should have notified her Principal immediately upon discovering the loss. The Principal (and the coach) should have notified the sheriff immediately upon the Principal's being advised about the situation. Why wait several days until November 5th to report the incident to the sheriff?
"Was she wrong? Most definitely. Was Principal Ledbetter wrong? Again, most definitely. The sheriff's investigation cleared Laura Wilson of any culpability. Who stole the money? What happened to the funds? The matter to this day remains a mystery.
"As the Superintendent accepted the statements of Ms. Wilson, coupled with the conclusions of the sheriff, and merely admonished her as to deposit procedures instead of bringing termination proceedings at that time, is this really something that should be brought to the forefront some 18 months later?
"Though District procedure and policy were not adhered to, no monies were lost. All checks were replaced by the makers thereof and the cash portion was paid by the coach herself. It was an expensive lesson for Ms. Wilson and one not likely to reoccur."
Thus, the hearing officer discussed the evidence before him, considered it in light of standards that recognized the fairness and appropriateness of the consequences that resulted from the conduct under the particular circumstances and concluded that terminating Wilson's employment as a teacher was "arbitrary, irrational, unreasonable, or irrelevant to maintaining an efficient school system," and therefore that there was no good cause for terminating Wilson's employment. The quotation from the hearing officer's determination noted above exemplifies the entire 24-page document  it is a thoughtful examination of the evidence and the facts followed by plain statements of the reasons supporting the hearing officer's conclusions as to the appropriate consequences for Wilson. Thus, even though I might have come to a different conclusion than the hearing officer on one or more of the allegations in the complaint based upon my review of the evidence and arguments contained in the record before us, this Court's standard of review is not whether another reviewer might disagree with the hearing officer. Rather, we must consider whether the hearing officer's conclusions were arbitrary and capricious, and I do not believe that this Court can fairly or correctly fit the hearing officer's determination into any definition of arbitrary and capricious. Certainly the hearing officer's determination is not "founded on prejudice or preference rather than on reason or fact." Black's 113.
Although the Court of Civil Appeals dismissed the hearing officer's consideration of a seven-part analysis for determining whether Wilson's contract could be canceled for just cause as an improper consideration of a test used in collective-bargaining *1178 agreements, the test has in fact been often employed by arbitrators as a means for explaining whether an employment termination is correct. See, e.g., Summit County Children Servs. Bd. v. Communication Workers of America, Local # 546, 113 Ohio St.3d 291, 865 N.E.2d 31 (2007)(holding that the test was properly applied to consider whether the employment of a county employee who worked for the department of children's services was properly terminated); American Fed'n of State, County & Mun. Employees, Dist. Council 88, AFL-CIO v. City of Reading, 130 Pa. Commw. 575, 568 A.2d 1352 (1990)(holding that an arbitrator's determination that a city could properly terminate employment for just cause under the application of a similar test was an appropriate determination that the reviewing court was not entitled to second-guess). Further, this seven-part test attributed to arbitrator Carroll Daugherty in Whirlpool Corp. v. International Union of Elec., Radio, & Mach. Workers Local 808, 58 Lab. Arb. (BNA) 421 (1972), is often advocated as a reasonable basis for what constitutes "just cause" in the resolution of employment disputes, whether those disputes arise from collective-bargaining agreements or other agreements or employment situations. See generally Russell E. Joki, The History and Application of Supplemental Contracts for CoachesDoes Due Process Exist in Their Game Plan?, 41 Idaho L.Rev. 293 (2005); Kurt H. Decker, Pennsylvania's Whistleblower Law's Extension to Private Sector Employees: Has the Time Finally Come to Broaden Statutory Protection for All At-will Employees?, 38 Duq. L.Rev. 723 (2000); and Mollie H. Bowers and E. Patrick McDermott, Sexual Harassment in the Workplace: How Arbitrators Decide, 48 Clev. St. L.Rev. 439 (2000).
The use of the term "collective bargaining" by the main opinion and the Court of Civil Appeals to imply some sort of new analysis that is at odds with the law of this State completely mischaracterizes what § 16-24-10(a) requires of the hearing officer. The fact that the hearing officer employed seven points of consideration that had been considered in employment disputes in other contexts as a factor in deciding whether good cause existed in this case does not mean that the hearing officer imposed any new standard. Rather, the seven points provided a framework for the hearing officer's statement of the rationale for his decision. The hearing officer sets forth his rationale, and the reviewing court must apply the correct standard of reviewing that rationale. The fact that other reviewing courts review other arbitrators' decisions under a standard of whether it complies with the employment agreement or "draws its essence from the collective bargaining agreement," does not affect the standard of review that this Court and the Court of Civil Appeals must apply under § 16-24-10(b). That standard is whether the hearing officer's determination is arbitrary and capricious. That is, the reviewing court must consider whether the hearing officer's rationale is based upon reason and fact rather than on preference or prejudice. Even a cursory review of the hearing officer's comprehensive and critically reasoned determination will support a legal and common-sense conclusion that his determination was not arbitrary and capricious. By disregarding the plain language of § 16-24-10 and substituting different requirements on the hearing officer and upon the appellate review of the hearing officer's findings, this Court abandons its duty to construe and apply acts of the legislature.[7]
*1179 In addition to the fact that the main opinion and the Court of Civil Appeals have superimposed an additional standard of review on § 16-24-10(b), the effect of the opinion this Court releases today will be to reduce the degree of reasoned consideration by hearing officers faced with review of terminations of tenured teachers. In the context of this case, it sends a message to teachers that their employment will be evaluated on popularity and political considerations rather than on facts and fairness. That is, the main opinion operates in precise opposition to the statutory requirement of § 16-24-8 that a contract cancellation may not be based on "political or personal reasons." Moreover, the main opinion leaves appellate review without any ascertainable standard. The term "arbitrary and capricious" is now conflated with what was previously the standard for appellate review. For all that appears in the main opinion, all the hearing officer need do on remand to satisfy the good-cause standard is to assert, without benefit of any analytical factors, that the Board's proposed sanction is either "arbitrary, irrational, unreasonable, or irrelevant to maintaining an efficient school system," under Laidlaw Transit and Ellenburg, supra. I believe that the main opinion commits a serious error, in contravention of the plain language of § 16-24-10 governing the scope of this Court's review, and I dissent.
NOTES
[1] Wilson uses the term arbitrator throughout her brief to refer to the "hearing officer" referred to in the Alabama Teacher Tenure Act.
[2] Section 16-24-8, Ala.Code 1975, was not affected by Act No. 2004-566, Ala. Acts 2004.
[3] Section 36-25-5(c), Ala.Code 1975, provides:

"No public official or public employee shall use or cause to be used equipment, facilities, time, materials, human labor, or other public property under his or her discretion or control for the private benefit of the public official [or] public employee. . . . "
[4] The Alabama Association of School Boards also filed a brief as amicus curiae, in support of the Board.
[5] The existence of an improper motive for termination, a political or personal reason, is in the nature of a defense. The teacher asserting such a motive must place the motive "at issue" by specifically pleading the facts alleged to establish an improper motive.
[6] See, e.g., Ala.Code 1975, § 2-12-4 ("The court may affirm the decision or remand the case for further proceedings, or it may reverse or modify the decision if it was affected by an error of law or was unsupported by substantial evidence or was arbitrary or capricious."); Ala.Code 1975, § 2-31-15 ("[T]he commissioner's ruling shall be considered prima facie just and correct and shall not be overturned unless the circuit court finds that the commissioner's action was arbitrary and capricious . . . or that the commissioner erred to the prejudice of the appellant's substantial rights in his application of the law."); Ala.Code 1975, § 22-11A-64(f) ("The court may reverse or modify the decision . . . if . . . the final decision . . . (5) Is affected by other error of law. . . . (7) Is arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."); Ala.Code 1975, § 27-2-32(e) ("The court shall revise, vacate or modify the commissioner's decision . . . if it finds that: (1) The commissioner erred to the prejudice of appellant's substantial rights in his application of the law; . . . or (3) The commissioner's action was arbitrary or capricious."); Ala. Code 1975, § 34-13-31(c) ("The court . . . shall set aside the order, rule or action . . . if the court finds that the board erred to the prejudice of the appellant's substantial rights in its application of the law . . . or that the order was arbitrary, capricious or inconsistent with respect to any of the material issues involved. . . ."); Ala.Code 1975, § 34-17A-17(f) ("The court may reverse . . . the decision of the board if . . . the disciplinary action . . . involves any of the following circumstances: . . . (4) An error of law. . . . (6) A finding that is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."); Ala.Code 1975, § 34-27-37(d) ("An application for rehearing . . . is appropriate only if the final decision is . . . (5) Affected by other error of law; . . . or (7) Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."); Ala.Code 1975, § 41-22-17(c) ("Such application for rehearing will lie only if the final order is . . . (5) Affected by other error of law; . . . or (7) Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."); and Ala.Code 1975, § 41-22-20(k) ("The court may reverse the . . . decision . . . if the court finds . . . the agency action [to be] . . . (5) Affected by other error of law; . . . or (7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.").
[7] "`Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.'" Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. System Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992)). See also State v. Lupo, 984 So.2d 395 (Ala.2007).