PITTMAN, Judge.
This is a discretionary appeal by the Montgomery County Board of Education (“the Board”) from a hearing officer’s decision, pursuant to former § 16 — 24—10(a), Ala.Code 1975,[1] overturning the Board’s 20-day suspension without pay of Sondra Moon-Williams, a tenured special-education teacher at Carver High School in Montgomery. We reverse.

Facts and Procedural History

Special education for public-school students with disabilities is governed by the Individuals with Disabilities in Education Act (“the IDEA”), 20 U.S.C. §§ 1400-1491. The IDEA requires that each student with a disability have an Individualized Education Program (“IEP”) designed to meet his or her unique needs. The hearing officer’s decision explained:
“The IEP is developed, reviewed, and revised by an IEP Team comprised of one or both of the child’s parents, a representative of the school district (not the child’s teacher) who is qualified to provide or supervise special education, the child’s teacher(s), in some cases a general education teacher, and professionals who are qualified to explain the results of testing — for example, a psychologist and/or an educational evaluator. The IEP includes the child’s present level of academic and functional performance, measurable annual academic and functional goals, the special-education services, related services, and supplementary aids to be provided to the child.
“The IEP team is responsible for conducting an annual review to ensure that the student is meeting goals and/or making progress on benchmark objectives.”
At the time of the hearing in this case, Moon-Williams had been a special-education teacher at Carver for six years. Every year, she had been responsible for developing an IEP for each of her students. The IEPs were developed on a calendar-year basis rather than an academic-year basis. Thus, the term of a student’s IEP could begin on any date during the school year and end on the corresponding date the following year. During the 2010-2011 school year, Moon-Williams taught 19 special-education students. The IEP for student D.M. ran from February 9, 2010, to February 8, 2011.
On March 30, 2010, Yolanda Gracie, the county special-education director, and Diann Jones, the county special-education zone coordinator, met with the special-education teachers at Carver and informed them that the State Department of Education had issued a new directive, mandating that all IEPs begin on the first day of the academic year and end on the last day of the academic year. That meant, for example, that Moon-Williams was required *207 to develop under the “new process” an IEP for D.M. that extended from February 9, 2010, through the end of the 2009-2010 school year on May 26, 2010, and then to create another IEP for D.M. that extended from the beginning of the 2010-2011 school year on August 18, 2010, through the close of school in May 2011. Moon-Williams testified that she had told Gracie and Jones that it was impossible to comply with the March 30 directive before the end of the school year.
On March 30, 2010, Moon-Williams had 11 IEPs to complete under the new process before the end of the school year on May 26, 2010. She did not complete all the IEPs, including the IEP for D.M., by the end of the 2010 school year. When the special-education teachers returned to school for the 2010-2011 academic year on August 17, 2010, they received an e-mail from Jones, with a list of the IEPs (including the IEP for D.M.) that had not been placed in the new process according to the March 30, 2010, directive. On August 18, 2010, Bernice Floyd, the special-education facilitator at Carver, sent a letter to the Carver special-education teachers, setting a 10-day deadline for completion of the IEPs on Jones’s list. At that point, Moon-Williams had seven IEPs to complete, including the IEP for D.M.
At the hearing, Moon-Williams testified that it had been her understanding that, because the information contained in D.M.’s February 9, 2010, IEP was still accurate, she could import the information from the February IEP into a new document with a new icon and have the individuals who had signed the February IEP sign the new IEP. Therefore, she said, she had copied and pasted the substance of the February IEP into a new document that indicated that an IEP meeting had been held on May 18, 2010, after which, she said, she had contacted the individuals who had signed the February IEP. According to Moon-Williams, she had telephoned Kristen Dial, the guidance counselor at Carver who was at home on maternity leave, and had received permission to sign Dial’s name. Then, Williams had signed the name of Lorraine Johnson, the job coach at Carver, because, she said, Johnson had taken part in the first IEP meeting and no information had changed since the time of that meeting. Moon-Williams explained that she and Johnson were friends and she had thought that Johnson would not mind if Moon-Williams signed her name.
Following an audit of the IEP records at Carver, Jones determined that, although D.M.’s IEP indicated a meeting date of May 18, 2010, the document containing that date had not been created until August 18, 2010. In addition, Jones determined that Lorraine Johnson, whose purported signature indicated that she had attended an IEP meeting on May 18, 2010, was not at work on May 18, 2010, and could not have signed the IEP document on that day. Jones reported her findings to Gracie, who determined, after meeting with Dial and Johnson, that Dial and Johnson had neither signed the IEP document nor given Moon-Williams permission to sign their names.
On September 27, 2010, Gracie issued a letter of reprimand to Moon-Williams, stating that Moon-Williams had committed a major violation of the IDEA by forging signatures on a document, by denying D.M. a free and appropriate public education “by not having an IEP meeting but having signatures on the IEP as if a meeting was held,” and by “caus[ing] the school district to be out of compliance with federal and state guidelines.” The letter advised Moon-Williams that she had the right to submit a response within seven days. Moon-Williams did not acknowl *208 edge receipt of the letter or submit a response.
After receiving a copy of Gracie’s reprimand, Veverly Arrington, the human-resources director for the county school system, recommended to Superintendent Barbara Thompson that Moon-Williams be suspended without pay for 20 days. Arrington testified that she had based that recommendation on the fact that forgery is a criminal offense; that Moon-Williams’s conduct had exposed the school system to legal liability; that the Board’s progressive-discipline guidelines indicated that “falsification of documents, applications, and other official records may warrant suspension on the first occurrence”; and that another teacher who had committed an act of forgery on an IEP had been suspended for 20 days.
On November 1, 2010, Superintendent Thompson sent Moon-Williams the following notice of suspension:
“This is notice, in writing, that I intend to recommend a major suspension of your employment as a teacher at Carver Senior High School with the Montgomery County Board of Education. The reasons for the proposed suspension are as follows: immorality, failure to perform duties in a satisfactory manner, and other good and just cause. The specific facts supporting the grounds showing that the suspension is taken for one or more of the reasons are as follows:
“1. On September 27, 2010, Yolanda Gracie, Director of Special Education reprimanded you and reported to the Office of Human Resources that you falsified and forged portions of a student’s Individual Education Plan (TEP).
“2. Gracie reported that you dated a signature page for an IEP for May 18, 2010, but it was actually created on August 18, 2010.
“3. Gracie also reported that the signatures of Kristen Dial, Counselor, and Lorraine Johnson, Job Coach, were forged. Dial and Johnson verified that their signatures were not authentic on the signature page that you created.
“4. Additionally, forging the signatures on the IEP gave the appearance that an IEP meeting was held when in fact no meeting took place. This is a violation of the Individuals with Disabilities in Education Act.
“5. Because of the severity of your actions, a suspension of 20 days without pay is warranted.”
On November 29, 2010, the Board voted to adopt the superintendent’s recommendation. Moon-Williams contested the suspension pursuant to former § 16-24-10(a), and a hearing was held on March 11, 2011. On May 3, 2011, the hearing officer rendered his decision, concluding that the Board had “substantive just cause,” but not “procedural just cause,” to suspend Moon-Williams and that “no action” should be taken against her. See former § 16-24-10(a) (stating that “[t]he hearing officer shall determine which of the following actions should be taken relative to the employee: Cancellation of the employment contract, a suspension of the employee, with or without pay, a reprimand, other disciplinary action, or no action against the employee”). The Board timely appealed, and this court exercised its discretion to hear the appeal based on the “special and important reasons” outlined by the Board.

Standard of Review

Former § 16-24-10(b) provided that “Itjhe decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision *209 arbitrary and capricious, in which case the court may order that the parties conduct another hearing consistent with the procedures of this article.” If this court determines that the hearing officer’s decision failed to follow the applicable law, however, it “ha[s] the authority to reverse the decision ... because the failure to follow the applicable law renders the hearing officer’s decision arbitrary and capricious.” Ex parte Wilson, 984 So.2d 1161, 1170 (Ala.2007). See also Ex parte Webb, 53 So.3d 121, 127 (Ala.2009).

Discussion

The Board argues that the hearing officer failed to follow applicable law by applying a two-pronged “just-cause” standard to the review of Moon-Williams’s suspension. The hearing officer explained his reasoning as follows:
“ ‘Just cause’ is an employment law concept that hearing officers experienced in employment law regularly interpret and apply. They commonly parse ‘just cause’ into two segments— one substantive; the other procedural. The substantive requires proof that the employee, in fact, engaged in the behavior for which, in this case, suspension was recommended.”
The hearing officer found that the Board had established “substantive just cause” for suspending Moon-Williams because it had proven (and Moon-Williams had acknowledged) that she had forged signatures on an IEP. The hearing officer’s decision states:
“[Moon-Williams’s] explanation that she forged signatures on the IEP because she was too busy to conduct a meeting and develop the IEP properly cannot be taken seriously. No matter how busy she was during this period, she cannot be excused from falsifying documentation required by federal law. Moreover, while the requirement of doing a school-year IEP for D.M. may have been burdensome for the reasons Ms. Moon-Williams explained, she cannot justify her deception of changing the dates on the February IEP and signing for the team members as if a team meeting had been conducted.”
The hearing officer then proceeded to consider “procedural just cause,” whose components he outlined as follows:
“whether discipline is administered fairly and even-handedly; whether similarly situated employees are treated the same; whether the employee knows or should reasonably have been expected to know that engaging in her behavior would likely result in disciplinary action; and whether there was a reasonable relationship between the behavior and the punishment imposed.”
Addressing the “due-process issue [of] whether Ms. Moon-Williams was treated fairly when she was suspended for the same misconduct for which she had been reprimand[ed],” the hearing officer answered that question in the negative, concluding that the Board had violated a principle of “workplace double jeopardy” by suspending Moon-Williams based on the same misconduct for which she had previously been reprimanded.
The Board contends that the hearing officer’s decision is due to be reversed as arbitrary and capricious because it failed to follow Alabama law (a) by segmenting the “just-cause” standard into substantive and procedural elements and (b) by relying on a doctrine of “workplace double jeopardy.” We agree. In Ex parte Wilson, 984 So.2d 1161 (Ala.2007), our supreme court set out the definition of “just cause” under Alabama law and rejected a seven-part test for “just cause” that the hearing officer in Wilson had imported from the law applicable to collective-bar *210 gaining agreements. See 984 So.2d at 1168-71. In the present case, the hearing officer applied a “procedural just-cause standard” whose components are very similar to those in the seven-part test that was rejected in Ex parte Wilson. See id. Based on Ex parte Wilson, we conclude that Alabama law does not recognize the “procedural just-cause standard” applied by the hearing officer in this case.
Nor does Alabama law recognize a principle of “workplace double jeopardy.” See Colburn v. Tuscaloosa Cnty. Bd. of Educ., 688 So.2d 881 (Ala.Civ.App.1997). In Colburn, a school-bus driver was dismissed from her employment because, among other things, she had caused $8,000 in damage to the bus she drove by failing to check the oil in the engine and had failed to attend a mandatory drug program for bus drivers. For the first instance of misconduct, she had been reprimanded; for the second instance, she had been suspended from driving for a few days. When the bus driver contested the termination of her employment, an employee-review panel convened pursuant to the Fair Dismissal Act, see former § 36-26-100 et seq., Ala.Code 1975, refused to consider the two instances of misconduct because “it concluded that to terminate her for those same instances of misconduct would amount to double jeopardy.” Colburn, 688 So.2d at 883. The circuit court reversed the panel’s decision, and this court affirmed, holding that “the constitutional prohibition against the imposition of double jeopardy does not apply to civil proceedings, including state administrative proceedings related to employment termination.” Id. (citing Heath v. Alabama State Tenure Comm’n, 401 So.2d 68 (Ala.Civ.App.1981)).
Moon-Williams argues that the hearing officer’s decision can and should be affirmed based upon the general principle that a hearing officer has broad discretion to determine whether the punishment ordered by the Board was excessive or unreasonable. Citing Ex parte Dunn, 962 So.2d 814 (Ala.2007), Moon-Williams contends that this court is not permitted to second-guess the wisdom of a hearing officer’s decision that a teacher’s punishment was excessive or unreasonable.
There is nothing in the hearing officer’s decision to indicate that he considered Moon-Williams’s suspension to be excessive. On the contrary, in responding to Moon-Williams’s argument that there was no reasonable relationship between the misconduct with which she was charged and the 20-day suspension because, she insisted, the penalty was excessive in light of the mitigating factor that she was a competent teacher who was held in high regard by her colleagues, the hearing officer concluded:
“[ D] espite evidence of Ms. Moon-Williams’s admirable teaching ability and performance, these factors do not mitigate her delinquent behavior. Thus, ... there is no basis to make a finding that the amount of the discipline was excessive. In fact, there was testimony of another incident in which a Special Ed teacher had falsified documents and made forgeries on an IEP, and was given a twenty-day suspension.”
(Emphasis added.) Cf. Ex parte Dunn, 962 So.2d at 823-24 (refusing to second-guess a hearing officer’s decision that a teacher’s exemplary employment record was a mitigating factor that made cancellation of his contract too severe a penalty). The hearing officer’s determination that Moon-Williams’s suspension was unreasonable was not based upon any assessment of excessiveness or severity, but only upon the suspension’s having been imposed after a previous reprimand for the same conduct. The hearing officer con- *211 eluded that the Board’s system of progressive discipline did not countenance “multiple sanctions for the same misconduct.” We disagree.
At the hearing, Gracie testified that she had issued the letter of reprimand to Moon-Williams so as to comply with a “corrective-action plan,” which had been developed by the Board and approved by the State Department of Education, to reduce the number of IEPs that failed to satisfy state and federal requirements. The corrective-action plan stated, in pertinent part, that
“[s]pecial-education teachers will receive a letter of reprimand from the special-education director when IEPs of students on a case log are not current, incomplete, or found to be out of compliance, and a copy of the reprimand will be given to the teacher, principal, and forwarded to Human Resources.”
The Board’s progressive-discipline guidelines state that, “[ajlthough discipline steps should normally originate with the employee’s supervisor, there may be situations which may require the intervention of a Central Office supervisor to observe and document the discipline.” At the hearing, Gary Hall, the principal of Carver, and Veverly Arrington, the human-resources director for the county school system, both testified that the human-resources department had the authority to adjust discipline based upon the circumstances. The progressive-discipline guidelines state that “[sjerious misconduct warranting suspension or termination on the first occurrence” is not subject to progressive discipline. The guidelines also specifically provide that “[f]alsification [of] documents, applications, and other official records” is a type of serious misconduct that “may warrant suspension or termination upon the first occurrence.”
At the hearing, the Board argued that Moon-Williams’s initial reprimand should be disregarded in determining whether her suspension was appropriate because, it said, the reprimand was issued pursuant to a Board corrective-action plan required by the State Department of Education. The hearing officer summarily rejected that argument, stating that “a plan that allows for multiple disciplines for the same misconduct is a flawed plan.”
We conclude that the sole basis for the hearing officer’s decision overturning Moon-Williams’s suspension was his reliance on a “procedural just-cause standard” and on a “workplace double jeopardy” doctrine that are not recognized under Alabama law. Because the hearing officer’s decision failed to follow Alabama law, it was, therefore, arbitrary and capricious.

Conclusion

We reverse the hearing officer’s decision and remand the cause for the parties to conduct another hearing consistent with the provisions of former § 16-24-10(b), Ala.Code 1975 (stating that “[t]he decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious, in which case the court may order that the parties conduct another hearing consistent with the procedures of this article”).
REVERSED AND REMANDED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. Section 16-24-1 et seq., Ala.Code 1975, was repealed by Act No. 270, § 14, Ala. Acts 2011 (effective July 1, 2011). The former act was replaced by § 16-24C-1 et seq., Ala.Code 1975 (the “Students First Act of 2011”). See Act No. 270, § 1, Ala. Acts 2011 (effective July 1, 2011). The former statute is applicable to this case because all events referred to herein occurred before July 1, 2011.